STATE of Wisconsin, Plaintiff-Respondent,†

v.

Jose L. ROBLES, Defendant-Appellant.

Court of Appeals

*No. 89–1769–CR. Submitted on briefs April 19, 1990.—Decided June 13, 1990.*

(Also reported in 458 N.W.2d 818.)

†Petition to review granted.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general and *Sally L. Wellman,* assistant attorney general.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mark Lukoff,* first assistant public defender.

Before Nettesheim, P.J., Brown and Scott, JJ.

NETTESHEIM, P.J.   Jose L. Robles appeals from a judgment of conviction for aggravated battery and obstructing an officer. Robles raises three issues on appeal: (1) the preliminary hearing on the aggravated battery charge was held beyond the ten-day time limit set forth in sec. 970.03(2), Stats.; (2) inadmissible hearsay statements made by Robles' police interpreter were received at the preliminary hearing; and (3) the information was improperly amended on the day of trial to add an allegation of Robles' habitual criminality status. We conclude that Robles waived the time objection to the holding of the preliminary hearing. We also conclude that no evidentiary error occurred at the preliminary hearing. However, we agree with Robles that the repeater amendment to the information was not timely. We reverse the sentencing portion of the judgment and remand with instructions to enter a new sentence.

## TIMELINESS OF PRELIMINARY HEARING

On January 17, 1989, Robles initially appeared with counsel in this case before the Honorable Wayne J. Marik. At that time, the Racine county district attorney filed a criminal complaint charging Robles with a felony, aggravated battery pursuant to sec. 940.19(3)(a), Stats., and a misdemeanor, obstructing an officer pursuant to sec. 946.41, Stats.

The state requested cash bond as a condition to Robles' release because Robles had recently pled guilty or no contest to a charge of disorderly conduct—a matter which had originally been charged as a battery. Robles explained that he lived with his brother-in-law, Francisco Corona. Robles asked that he be released on a signature bond co-signed by Corona. Robles stated to Judge Marik that Corona had already been contacted regarding this bond proposal through Attorney David Saldana who was representing Robles on other matters. Robles represented to Judge Marik that Corona was willing to co-sign the signature bond.

Judge Marik approved Robles' proposal and ordered $1000 signature bonds, to be co-signed by Corona, on each count. Judge Marik specifically advised Robles that Corona "is going to have to come down here and sign the bonds before you'll be released."

In Robles' and his attorney's presence, Judge Marik then set February 1, 1989, as the date for the preliminary hearing. This date was within the twenty-day limit for defendants who have been released from custody. Sec. 970.03(2), Stats. The date, however, was beyond the ten-day limit for defendants who are in custody and subject to bail in excess of $500. *Id.* Corona never co-signed the signature bonds and Robles remained in custody.

■

At the commencement of the preliminary hearing before the Honorable James Wilbershide on February 1, 1989, Robles moved to dismiss the complaint, arguing that the hearing was not timely commenced. Judge Wilbershide denied the motion, reasoning that Robles himself had requested the co-signer provision and that Robles had failed to obtain compliance with his own bond proposals.

Section 970.03(2), Stats., provides:

> The preliminary examination shall be commenced within 20 days after the initial appearance of the defendant if the defendant has been released from custody or within 10 days if the defendant is in custody and bail has been fixed in excess of $500. On stipulation of the parties or on motion and for cause, the court may extend such time.

A failure to conduct a timely preliminary hearing results in a loss of personal jurisdiction over a defendant. *Godard v. State,* 55 Wis. 2d 189, 190, 197 N.W.2d 811, 812 (1972).

■

We conclude that Robles waived any time defect in the commencement of the preliminary hearing by: (1) prevailing upon Judge Marik to approve a bond arrangement which anticipated Robles' release; (2) acquiescing in Judge Marik's scheduling of the preliminary hearing beyond the ten-day limit; and (3) failing to bring his "in-custody" status to the attention of the court during the running of the ten-day period after his initial appearance. Objections to personal jurisdiction can be waived. *Armstrong v. State,* 55 Wis. 2d 282, 285, 198 N.W.2d 357, 358 (1972).

If a defendant selects a course of action, that defendant will not be heard later to allege error or defects precipitated by such action. *Farrar v. State,* 52 Wis. 2d 651, 660, 191 N.W.2d 214, 219 (1971). Such an election constitutes waiver or abandonment of the right to complain. *Id.* We think this rule is all the more applicable in a case where the defendant's action not only impacts upon his own fate, *but also induces the court to take certain action in reliance thereon.* This is precisely what occurred in this case. Robles' bond proposal clearly conveyed the impression to Judge Marik that Robles would be released. Judge Marik even imposed conditions that would govern Robles' behavior were he released. Robles' representation that he would be released prompted Judge Marik to schedule the preliminary hearing outside the ten-day statutory limit.

Equally compelling is that Robles never brought his continuing "in-custody" status to the attention of the court during the running of the ten-day period. Had he done so, Judge Wilbershide and the state would have had an opportunity to comply with the statute's time deadlines. Or, the state might have sought a timely extension of the statute's deadline for cause. Sec. 970.03(2), Stats.

In effect, Robles sought the best of both worlds: release at his initial appearance based upon his own liberal bond proposal over the objection of the state and, that failing, release at the preliminary hearing because his proposal had failed. The law does not permit this. *See Farrar,* 52 Wis. 2d at 661-62, 191 N.W.2d at 219-20.[1]

---

[1]Having concluded that Robles waived his right to complain about the scheduling of the preliminary hearing, we need not address the state's other arguments on this issue.

## HEARSAY STATEMENTS OF ROBLES' INTERPRETER

At the preliminary hearing, Officer Frederik Radspinner testified that he had earlier interviewed Robles through an English/Spanish interpreter, Officer Valdez. During this interview, Robles made certain admissions against his interests. The state offered these admissions via Radspinner's testimony. Robles objected to Radspinner's testimony as inadmissible double hearsay pursuant to sec. 908.05, Stats.

The rules of evidence, subject to certain limited exceptions, apply at a preliminary hearing. *See* sec. 911.01(2), Stats.; *Mitchell v. State,* 84 Wis. 2d 325, 330, 267 N.W.2d 349, 352 (1978). Section 908.05, Stats., governs the admissibility of double hearsay: "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in this chapter."

Robles acknowledges that his statements made to the interpreter, Officer Valdez, are admissions by a party opponent and therefore are not hearsay. Sec. 908.01(4)(b), Stats. Robles argues, however, that his statements were inadmissible double hearsay because the state offered his admissions through the interrogator, Officer Radspinner, who received Robles' responses through the interpreter, Officer Valdez. We disagree.

The majority view holds that a defendant's statements made to an interpreter which, in turn, are relayed to an interrogator are not barred by the hearsay rule when the interrogator testifies. These cases reason that the interpreter, in effect, becomes that defendant's

agent; hence the translation is attributable to the defendant as his own admission. *See, e.g., United States v. Da Silva,* 725 F.2d 828, 831–32 (2nd Cir. 1983); *see also United States v. Beltran,* 761 F.2d 1, 9–10 (1st Cir. 1985); *United States v. Alvarez,* 755 F.2d 830, 860 (11th Cir. 1985), *certs. denied sub. nom Hernandez v. United States,* 474 U.S. 905 (1985), *Portal v. United States,* 482 U.S. 908 (1987); *Herrera v. State,* 532 So. 2d 54, 56–57 (Fla. Dist. Ct. App. 1988); *State v. Letterman,* 616 P.2d 505, 507 (Or. Ct. App. 1980), *aff'd,* 627 P.2d 484 (Or. 1981).

Recognized commentators in the area are also in agreement with the majority view. Weinstein and Berger in their treatise on evidence state:

> Provided the interpreter has a sufficient capacity, and there is no motive to misrepresent, the interpreter is treated as the agent of the party and the statement is admitted as an admission unless circumstances are present which would negate the presumption of agency.

4 J. Weinstein & M. Berger, *Evidence* sec. 801(d)(2)(C) (01), at 801 – 217–18 n.34 (1984); *see also* 6 J. Wigmore, *Evidence* sec. 1810(2), at 376 (Chadbourn ed. 1976).

Robles cites one case in opposition to the prevailing view on this question—*State v. Terrazas,* 783 P.2d 803 (Ariz. Ct. App. 1989). *Terrazas* regards the "attribution of an agency as an artifice . . . where the interpreter has been selected by prosecutorial forces investigating the defendant's participation in a crime." *Id.* at 806 n.3. Nonetheless, *Terrazas* held that the interrogator's hearsay testimony possessed " 'circumstantial guarantees of trustworthiness' to meet the requirements of exception (24)." *Id.* at 807.

We decline to adopt the *Terrazas* approach which presumptively disqualifies police interpreters from acting as such. We think the majority view is the better rule and we adopt it here. Absent evidence to the contrary, a suspect's choice to communicate through an interpreter signals that the interpreter is the suspect's agent. In some situations, the facts will negate an agency relationship. Examples are where the interpreter is unqualified, harbors a motive to falsify or gives an inaccurate translation. Here there is no suggestion or showing by Robles that the interpreter, Officer Valdez, operated under any of these conditions or motives. As such there was a "testimonial identity" between Robles and Valdez such that Robles' admissions came within sec. 908.01(4), Stats., as admissible non-hearsay. *See Da Silva,* 725 F.2d at 831–32.

## REPEATER AMENDMENT TO THE INFORMATION

Robles was arraigned on February 10, 1989, on the original information which contained no habitual criminality allegation. He pled not guilty to the charges. Thereafter, on the first day of trial, April 18, 1989, the state filed an amended information alleging the habitual criminality history. Robles objected, but the Honorable Jon B. Skow, the trial judge, permitted the amendment. Section 973.12(1), Stats., provides:

**Sentence of a repeater.** (1) Whenever a person charged with a crime will be a repeater as defined in s. 939.62 if convicted, any prior convictions may be alleged in the complaint, indictment or information or amendments so alleging *at any time before or at arraignment, and before acceptance of any plea. The court may, upon motion of the district attorney,*

*grant a reasonable time to investigate possible prior convictions before accepting a plea.* [Emphasis added.]

■
The trial court's ruling was error in light of *State v. Martin,* 156 Wis. 2d 399, 456 N.W.2d 892 (Ct. App. 1990), a decision not yet released when the court granted the amendment. *Martin* holds that the statute clearly prohibits amendments alleging repeater status after arraignment and plea. Id. at 407, 456 N.W.2d at 896.

■
Robles was sentenced to four years' imprisonment on the aggravated battery charge. The maximum imprisonment for such an offense is two years. Robles was also sentenced to two years consecutive imprisonment on the obstructing an officer charge. The maximum imprisonment for such an offense is nine months. Section 973.13, Stats., provides that where a court imposes a maximum penalty in excess of that permitted by the law, the excess portion of the sentence is void. In such a case, the sentence shall be commuted without further proceedings to the maximum permitted by the law.

Therefore, we reverse the sentencing portion of the judgment. We remand and direct that Robles' sentence for the aggravated battery charge be commuted to two years and Robles' sentence on the obstructing charge be commuted to nine months consecutive to the aggravated battery sentence. The place of imprisonment remains the Wisconsin state prisons. *See* sec. 973.03(2), Stats.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded with directions.