STATE of Wisconsin, Plaintiff-Respondent,

v.

Policarpio ARROYO, Defendant-Appellant.†

Court of Appeals

*No. 91-0856-CR. Submitted on briefs October 1, 1991.—Decided December 3, 1991.*

(Also reported in 479 N.W.2d 549.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Ann T. Bowe,* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle,* attorney general, by *Sharon Ruhly,* assistant attorney general.

Before Moser, P.J., Sullivan and Fine, JJ.

MOSER, P.J. Policarpio Arroyo (Arroyo) appeals from a judgment of conviction of party to the crimes of

first-degree intentional homicide, pursuant to secs. 940.01 and 939.05, Stats., and armed robbery, pursuant to secs. 943.32(1)(a) and (2), and 939.05, Stats. Arroyo appeals the conviction on the grounds that it was error for the trial court to admit the testimony, in English, of City of Milwaukee Police Department Detective Procopio Sandoval (Detective Sandoval) reporting a statement made in Spanish by Arroyo while held in a locked psychiatric ward in Illinois, four days after an alleged suicide attempt. On appeal, Arroyo argues that the statement is inadmissible because it is hearsay not subject to exception as the statement of a party opponent,[1] an inadmissible lay opinion,[2] and not a voluntary statement.[3] These arguments are unpersuasive and we affirm.

## Facts

On September 8, 1988, Surenda Arora was shot and killed during an armed robbery of a Milwaukee store which sold jewelry. On January 9, 1989, Detective Sandoval[4] went to Cook County Hospital in Chicago, Illinois to interview Arroyo. Arroyo was held in a locked ward, was not free to leave and, four days before the interview, had cut his neck in an alleged suicide attempt. Arroyo indicated his desire to converse in Spanish. Detective

---

[1]*See* secs. 908.02 and 908.01(4)(b)1, Stats.

[2]*See* sec. 907.01, Stats. Because of our holding on the admissibility of the statement as an admission of a party opponent, we need not address this issue. See *Sweet v. Berge,* 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983).

[3]Arroyo argues that the statement is inadmissable under the rule of *Schneckloth v. Bustamonte,* 412 U.S. 218 (1973).

[4]Detective Sandoval was accompanied by a second City of Milwaukee police detective, Alfred Torcivia, who does not speak Spanish.

Sandoval read, in Spanish, a Miranda warning which the defendant indicated he understood. Detective Sandoval conducted the interrogation in Spanish, took notes in English and prepared a report in English. Arroyo stated, in pertinent part, that he was one of four men participating in the robbery, but that one of the other men shot the victim. At trial, portions of the statement were corroborated by witnesses Moises Gonzalez, one of the four robbers who had been given immunity, and Carmen Salva, proprietress of the store and a witness to the robbery and shooting.

## Statement of Party Opponent

■

The State sought admission of Arroyo's statement, asserting that it was the admission of a party opponent. In *State v. Robles*,[5] we discussed the admissibility of statements made to police interpreters and adopted the majority view[6] that "a defendant's statements made to an interpreter which, in turn, are relayed to an interrogator are not barred by the hearsay rule when the interrogator testifies."[7] The discussion in *Robles* clearly indicates that under this view the basis for admission is that the interpreter effectively becomes the defendant's agent.[8] Thus, such statements are admitted pursuant to sec. 908.01(4)(b)3, Stats., which requires that the proffered statement be made by an agent of the defendant.

Arroyo argues that subsection (b) cannot apply. First, "the language [i.e., Spanish] of the statement was

---

[5]157 Wis. 2d 55, 458 N.W.2d 818 (Ct. App. 1990), *aff'd on other grounds sub nom. State v. Martin,* 162 Wis. 2d 883, 470 N.W.2d 900 (1991).

[6]*Id.* at 63, 458 N.W.2d at 822.

[7]*Id.* at 61, 458 N.W.2d at 821.

[8]*Id.* at 61–62, 458 N.W.2d at 821.

what made it Arroyo's statement" and thus, technically, the proffered statement does not meet the statutory criteria of being the defendant's "own statement."[9] Second, Detective Sandoval's alleged lack of qualifications as an interpreter and/or alleged improper motive to translate accurately bring this statement under the exceptions set forth in *Robles:* "In some situations, the facts will negate an agency relationship. Examples are where the interpreter is unqualified, harbors a motive to falsify or gives an inaccurate translation."[10]

The State correctly distinguishes *Robles* from the case at hand.[11] In *Robles,* the defendant made admissions against his interest while speaking to a police officer acting as an interpreter who then translated the defendant's statements to an interrogator (also a police officer).[12] Robles acknowledge that his statements to the interpreting officer were admissions by a party opponent but objected to the testimony of the interrogating officer as "double hearsay."[13] In *Robles,* in contrast to the case at bar, the testifying witness was not a bilingual interrogator.

Addressing the admissibility of Arroyo's incriminating statement under sec. 908.01(4)(b), Stats., we note that interpretation of a statute is a question of law that this court reviews de novo.[14] In sec. 908.01(1), a state-

[9]*See* sec. 908.01(4)(b)1, Stats.

[10]*Robles,* 157 Wis. 2d at 63, 458 N.W.2d at 822. *See also* sec. 908.01(4)(b)3, Stats.

[11]*See, e.g., United States v. Da Silva,* 725 F.2d 828, 831 (2nd Cir. 1983).

[12]*Id.* at 61, 458 N.W.2d at 821.

[13]*Id.*

[14]*Ball v. District No. 4, Area Bd.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

ment is defined as an assertion, whether it be oral, written or nonverbal.[15] Clearly, Arroyo communicated his assertion (that another man accompanying him shot the victim) to Detective Sandoval. The form of the assertion was oral, one of the statutorily enumerated forms in which an assertion may be made. We therefore hold that Detective Sandoval's testimony as to the oral assertion transmitted between Arroyo and himself is admissible under sec. 908.01(4)(b)1. Furthermore, we note that the trial court stated that any questions as to the ability of Detective Sandoval to understand Arroyo and report his assertion accurately would go to the weight to be given the statement by the jury following cross-examination, not to admissibility. We agree with this analysis. Arroyo's statement is admissible under sec. 908.01(4)(b)1 as his statement, *in an individual capacity,* to a party opponent.

## Voluntary Statement

■

The question of whether Arroyo's statement was voluntary is based upon his fourteenth amendment rights.[16] Voluntariness of a confession is a question of constitutional fact independently reviewed by the appellate court.[17] The trial court's finding of constitutional fact is independently reviewed by the appellate court because the scope of constitutional protections should

---

[15] A "statement" is (a) an oral or written assertion or (b) nonverbal conduct of a person, if it is intended by him as an assertion. [Section 908.01(1), Stats.]

[16]*State v. Pheil,* 152 Wis. 2d 523, 535, 449 N.W.2d 858, 863 (Ct. App. 1989).

[17]*State v. Owens,* 148 Wis. 2d 922, 926-27, 436 N.W.2d 869, 871 (1989).

not vary with individual fact finders.[18]

The defendant argues that whether a statement was voluntarily given must be determined from the totality of the circumstances, giving consideration to both the characteristics of the accused and the details of the interrogation.[19] However, this balancing is not reached unless there is some improper or coercive conduct by the police.[20]

Four days before the interview, and approximately four months after the shooting, Arroyo allegedly tried to commit suicide while under arrest. He was treated in a hospital and confined in a locked ward where he continued to receive care until his release to the Cook County jail. A Miranda-Goodchild[21] hearing was held, at which the trial court made the following findings of facts. Arroyo was sitting up in bed, unrestrained. He had previously been in restraints, according to the hospital record, in order to prevent a repetition of the suicide attempt. No testimony was offered to contradict the testimony of Detective Sandoval that the defendant was alert, responsive and cooperative. He was questioned in an open ward, in the language he himself requested. He was read his Miranda rights in Spanish, and after each

---

[18]*State v. Fry,* 131 Wis. 2d 153, 171, 388 N.W.2d 565, 573 (1986). *See also Pheil,* 152 Wis. 2d at 529-30, 449 N.W.2d at 860-61.

[19]*Schneckloth v. Bustamonte,* 412 U.S. 218, 226-27 (1973).

[20]*Colorado v. Connelly,* 479 U.S. 157, 167 (1986) ("[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.'") *See also Owens,* 148 Wis. 2d at 931, 436 N.W.2d at 873; *Pheil,* 152 Wis. 2d at 535, 449 N.W.2d at 863.

[21]*See State ex rel. Goodchild v. Burke,* 27 Wis. 2d 244, 133 N.W.2d 753 (1965).

portion of the Miranda warning he was asked and responded affirmatively, that he understood the element of the warning. Reviewing this record, there was no improper police activity.

For the reasons given above, we hold that Arroyo's statement was voluntary and properly admitted pursuant to sec. 908.01(4)(b)1, Stats.

*By the Court.*—Judgment affirmed.