STATE of Wisconsin, Plaintiff-Appellant,

v.

Robert J. JESKE, Defendant-Respondent.

Court of Appeals

*No. 95–0388–CR. Submitted on briefs October 9, 1995.—Decided October 26, 1995.*

(Also reported in 541 N.W.2d 225.)

For the plaintiff-appellant the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Mary E. Burke,* assistant attorney general.

For the defendant-respondent the cause was submitted on the brief of *Gerald P. Boyle* of Milwaukee.

Before Eich, C.J., Sundby and Vergeront, JJ.

EICH, C.J.   The State of Wisconsin appeals from an order denying its motion *in limine* to permit introduction of "other-acts" evidence in this child sexual assault case.

Jeske was charged with two counts of first-degree sexual assault: sexual contact with a person who has not attained the age of 13 years, in violation of § 948.02(1), STATS. The charges stemmed from allegations that, after engaging the victim, Tammy L., in

907

conversations of a sexual nature, Jeske touched her breasts and vaginal area. The evidence the State sought to introduce concerned similar suggestive conversations with Tammy's sister, Janet L., during the preceding year.

The trial court denied the State's motion, concluding that Jeske's conversations with Janet L., being "words" rather than "acts," were not admissible under § 904.04(2), STATS., which allows evidence of "other crimes, wrongs, or acts" if offered for certain purposes.[1] The court also concluded that even if § 904.04(2) applied to Jeske's conversations with Janet, they would not be allowed into evidence because: "[E]ven if it did [come under the statute], I . . . think the evidence is so prejudicial that it would outweigh any probative value because it would . . . show bad character by the way that he talks . . . ." The issue is whether the trial court erroneously exercised its discretion in so ruling. We think it did not and we affirm the order.

The facts are not in dispute. Jeske, a high school mathematics teacher and wrestling coach, was acquainted with Tammy's family through her older brother's participation in the school wrestling program. In early 1993, Tammy and her family met Jeske at a restaurant following a wrestling meet and Jeske, after hugging Tammy, who was only in sixth grade at the time, declared that he was going to take her to the high school prom. Later in the evening, Jeske asked

---

[1] Section 904.04(2), STATS., reads:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Tammy "[what she wanted] him to do on prom night," to which she replied: "Dance."[2] According to Tammy, Jeske kept "bugging" and "bothering" her, following her around the restaurant and pressing her about what she wanted to do on prom night, and she finally responded with what she thought he wanted to hear: to lose her virginity. Jeske said, "Well, you must know what you want," adding, "You must have fantasies or something," and asking Tammy, "Do you want to lose your virginity with me?" In order to "get away from him," Tammy said, "Well, I guess."

Tammy rode to another restaurant with Jeske (her parents were to follow them in another car a few minutes later). Despite the sexual nature of his questions to her and his persistence in asking them, she trusted him and didn't think he would "do anything" to her while they were alone. When Tammy got into Jeske's truck, she said he "started up" again, saying, "Now is your chance to tell me what you want to do on prom night," and then asking, "you want to lose your virginity with me?" The restaurant was closed when they arrived and Jeske parked across the street. Saying, "[T]his is between me, you, and the goal post," Jeske took Tammy's hand, held it for several seconds, and then put his arm around her. Jeske asked Tammy: "[I]f you should ever want to lose your virginity before [prom night], what should you do?" to which she replied: "I don't know. Don't do it." "No, just tell me," Jeske said, and placed his hand on Tammy's left breast, saying, "[K]eep your heart safe." Then, pushing his hand between her crossed legs and holding it there for several seconds, he said: "Keep your virginity safe."

---

[2] Tammy testified that, from Jeske's reaction, she felt he had wanted her to answer "like to be in bed with him or something."

Jeske was charged with sexually assaulting Tammy after she told others about the incident. In a pretrial motion, the State sought an order allowing evidence concerning several suggestive comments Jeske had made to Tammy's older sister, Janet, during the preceding year. No one contends that Jeske had any physical contact of a sexual nature with Janet at any time.

The State wanted the court to allow Janet to testify that, beginning in the spring of 1992, Jeske made several sexually suggestive comments to her. According to Janet, Jeske made a "bet" with her that if her brother were to qualify for the state wrestling tournament that year, Janet—who was then fifteen—would attend her junior prom with Jeske. She said that, as the 1992-93 school year progressed, Jeske would ask her whether she remembered making the bet, telling her at one point, "It could get both of us in a lot of trouble." Sometime later, when he again asked her about the "bet," and made a comment about "the importance of what often happened on prom night," Janet asked him what the bet was all about, to which he replied that if her brother qualified for the state wrestling tournament, the two of them (Jeske and Janet) "would have one night in the sack together." He then asked Janet whether she was a virgin and said he would be honored to be her first sexual partner. He told her she could pay the bet that night and suggested that he take her to his house where "they could do it." When Janet refused, he suggested settling the bet in his hotel room during the state tournament in Madison. After this conversation, Janet began avoiding Jeske and nothing further transpired between them.

■ The State argued to the trial court that the evidence of Jeske's remarks to Janet was admissible under § 904.04(2), STATS., as relevant to his motive, intent and plan to sexually assault Tammy. So-called other-acts evidence is admissible under a two-part test. First, the trial court determines the admissibility of the evidence under § 904.04(2): whether it is offered for a purpose *other than* to prove the defendant's character and that he or she acted in conformity therewith. *State v. Clark*, 179 Wis. 2d 484, 491, 507 N.W.2d 172, 174 (Ct. App. 1993). As indicated above, evidence is not excluded under § 904.04(2) if it is "offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The exceptions listed in the statute are neither mutually exclusive nor exhaustive. *State v. Plymesser*, 172 Wis. 2d 583, 592, 493 N.W.2d 367, 371 (1992). Rather, they " 'slide into each other . . . [and] are impossible to state with categorical precision . . . .' " *Id.* (quoted source omitted).

If the trial court rules that the evidence qualifies under one of the exceptions stated in § 904.04(2), STATS., the court must then determine whether its probative value is substantially outweighed by the danger that its admission would result in unfair prejudice to the other party. *Clark*, 179 Wis. 2d at 491, 507 N.W.2d at 174.

■ Each of the two steps contemplates a discretionary determination by the trial court. *See Plymesser*, 172 Wis. 2d at 591-92, 493 N.W.2d at 371-72. In *Burkes v. Hales*, 165 Wis. 2d 585, 590-91, 478 N.W.2d 37, 39 (Ct. App. 1991), we discussed the limited scope of our review of a trial court's discretionary rulings:

A court exercises discretion when it considers the facts of record and reasons its way to a rational, legally sound conclusion. It is "a process of reasoning" in which the facts and applicable law are considered in arriving at "a conclusion based on logic and founded on proper legal standards." Thus, to determine whether the trial court properly exercised its discretion in a particular matter, we look first to the court's on-the-record explanation of the reasons underlying its decision. And where the record shows that the court looked to and considered the facts of the case and reasoned its way to a conclusion that is (a) one a reasonable judge could reach and (b) consistent with applicable law, we will affirm the decision even if it is not one with which we ourselves would agree.

It need not be a lengthy process. While reasons must be stated, they need not be exhaustive. It is enough that they indicate to the reviewing court that the trial court "undert[ook] a reasonable inquiry and examination of the facts" and "the record shows that there is a reasonable basis for the . . . court's determination." Indeed, "[b]ecause the exercise of discretion is so essential to the trial court's functioning, we generally look for reasons to sustain discretionary decisions."

(Citations, footnotes and quoted source omitted.)

■

In simplest terms, "discretion" contemplates a reasoning process which considers the applicable law and the facts of record, leading to a conclusion a reasonable judge could reach; "and while it may be that we would have decided the [question] differently, that is not the test; it is enough that a reasonable judge could have so concluded . . . ." *Schneller v. St. Mary's Hosp. Medical Ctr.*, 155 Wis. 2d 365, 374, 376, 455 N.W.2d 250, 254,

255 (Ct. App. 1990), *aff'd*, 162 Wis. 2d 296, 470 N.W.2d 873 (1991).

Because, as the above authorities indicate, "a trial court in an exercise of its discretion may reasonably reach a conclusion which another judge or another court may not reach," *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20-21 (1981), we have said that whenever a trial court has discretion in a matter, it has " 'a limited right to be wrong . . . without incurring reversal.' " *State v. McConnohie*, 113 Wis. 2d 362, 370, 334 N.W.2d 903, 907 (1983) (quoting from M. Rosenberg, *Appellate Review of Trial Court Discretion*, 79 F.R.D. 173, 176 (1979)). The court's discretionary determinations are not tested by some subjective standard, or even by our own sense of what might be a "right" or "wrong" decision in the case, but rather will stand unless it can be said that no reasonable judge, acting on the same facts and underlying law, could reach the same conclusion.

While we might well have granted the State's motion had we been in the trial court's position, concluding that the evidence was relevant and, further, that its probative value was not substantially outweighed by the possibility of unfair prejudice, the well-established principles of law we have discussed above require us to sustain the court's exercise of its discretionary authority to allow the evidence.

We note first that the trial court erred when it initially concluded that the evidence did not fit any of the statutory exceptions found in the other-acts statute, § 904.04(2), STATS., because it concerned only Jeske's words and not his acts. It is well established that verbal statements may be admissible as other-acts

evidence even when not acted upon. *See Day v. State*, 92 Wis. 2d 392, 404-05, 284 N.W.2d 666, 672-73 (1979) (seeking sexual intercourse with other young girls admissible to show preconceived plan); *State v. Tarrell*, 74 Wis. 2d 647, 658, 247 N.W.2d 696, 703 (1976) (obscene remark to girl admissible to show scheme or motive in child sexual assault); *State v. Bergeron*, 162 Wis. 2d 521, 530-31, 470 N.W.2d 322, 325-26 (Ct. App. 1991) (use of an alias admissible to show intent to cover up his participation in a sexual assault and also as part of the background of the case).

Our disagreement with the trial court's conclusion as to the relevancy of Janet's testimony under § 904.04(2), STATS., does not warrant reversal, however, because the court went on to conclude that, even if the evidence were relevant under one or more of the exceptions to § 904.04(2), it would still be disallowed because its probative value was outweighed by the danger of unfair prejudice. As indicated, the court based that ruling on its belief that to allow the evidence of Jeske's suggestive remarks to Janet would permit the jury to infer that he was a person of such low character that he must have sexually assaulted Tammy several months later.

In *State v. Mordica*, 168 Wis. 2d 593, 605, 484 N.W.2d 352, 357 (Ct. App. 1992), we recognized that unfair prejudice occurs

> where the proffered evidence, if introduced, would have a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case. Stated more concisely,

> unfair prejudice means a tendency to influence the outcome by *improper* means.

(Citations omitted.)

The State renews the argument made to the trial court: that Jeske's statements to Janet should be admitted under § 904.04(2), STATS., as evidence of his "motive, intent and plan in sexually assaulting Tammy." The supreme court stated in *State v. Friedrich*, 135 Wis. 2d 1, 29, 398 N.W.2d 763, 775 (1987), that the purpose of the several exceptions to the rule of § 904.04(2) "is to draw a distinction between a plan or scheme and a mere 'propensity or leaning' toward some forbidden act," making the former admissible and the latter inadmissible. After reviewing the record in this case, we cannot say that no reasonable judge could reach the conclusions reached by the trial court: (1) that allowing Janet's proffered testimony could result in a danger of unfair prejudice to Jeske by putting evidence before the jury that because he made similar suggestive remarks to Tammy's sister a year or so earlier, he must have culminated similar advances to Tammy by sexually assaulting her; and (2) that that danger substantially outweighed the probative value of the evidence.

*By the Court.*—Order affirmed.