## COURT OF APPEALS
## DECISION
## DATED AND FILED

## May 12, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP270-CR**

Cir. Ct. No. **2016CF3925**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

KIEUTA Z. PERRY, JR.,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Milwaukee County: T. CHRISTOPHER DEE, Judge. *Affirmed.*

Before Dugan, Fitzpatrick and Donald, JJ.

¶1 FITZPATRICK, J. Kieuta Z. Perry, Jr. appeals a judgment of conviction, following a jury trial, for armed robbery and first-degree recklessly endangering safety, both as a party to a crime. *See* WIS. STAT. §§ 943.32(2),

941.30(1), and 939.05 (2017-18).[1]  At trial, Perry requested that the trial court grant a mistrial after a witness made a statement, unprompted, concerning a prior act allegedly committed by Perry.  The trial court denied Perry's motion.  On appeal, Perry contends that the trial court erroneously exercised its discretion in denying his mistrial motion.  Perry asks this court to reverse the trial court's ruling on his motion for a mistrial and his judgment of conviction, and to remand this matter for a new trial.  We conclude that Perry has failed to show that the trial court erroneously exercised its discretion.  Therefore, we affirm Perry's conviction.

## BACKGROUND

¶2     The following facts are undisputed for purposes of this appeal.

¶3     Perry was charged with one count each of armed robbery, as a party to a crime, first-degree recklessly endangering the safety of another with the use of a dangerous weapon, as a party to a crime, and possession of a firearm by a felon. The charges against Perry arose from an incident in which M.R. was robbed at gunpoint on the evening of May 25, 2016, and gunshots were fired in the direction of M.R.'s son, I.G.

## I.  Pertinent Trial Testimony.

¶4     At trial, there was testimony from lay witnesses, testimony from witnesses who participated in the subsequent police investigation, and testimony from Perry.  We now summarize pertinent testimony from each.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

## A. Testimony From Lay Witnesses.

¶5      M.R. testified to the following.  On the evening of May 25, 2016, M.R., two friends, and a child were exiting a vehicle in the area of South 21st Street in Milwaukee when a man came up to M.R. and pointed a gun at her head. A second man was, according to M.R., "backing [] up" the man with the gun.[2] The man with the gun demanded that M.R. give him the keys to her vehicle.  The same man grabbed M.R.'s purse and "took off."  One of M.R.'s friends yelled to I.G. for help.  I.G. then approached the two men and asked, "what are you doing?" M.R. then heard gun shots.

¶6      A.R. was with M.R. on the evening of May 25, 2016, when M.R. was robbed.  A.R. testified to the following.  Two men exited a truck and Perry "put a gun against [M.R.'s] head" and "asked for the keys to the [vehicle]."  The men were wearing hoods and "[t]hey had the draw strings tight," but A.R. "could see their faces."

¶7      I.G. testified to the following.  On the evening of May 25, 2016, I.G. was approximately five houses away from M.R. when he heard her scream his name.  I.G. then began running toward M.R.  I.G. saw two men:  Perry, who was holding a gun; and another man who was holding a purse.  As I.G. ran toward Perry and the other man, Perry shot in I.G.'s direction "five, six times."  After the gunshots were fired, Perry and the other man left the scene in a brown truck.

¶8      I.G. also testified about a photo array in which he identified Perry. On direct examination, I.G. testified that the photo array was conducted three to

---

[2] The identity of the second man was not testified to at trial and is not relevant to this appeal.

five days after the robbery, but I.G. acknowledged on cross-examination that the photo array was conducted "several months" after the robbery. In response to a question by Perry's trial counsel on whether it was "the entire face … that helped [I.G.] identify [Perry]? Or was it some feature of his?" I.G. answered, "It was just his face, his height." Then, unprompted, I.G. stated: "Didn't he shoot somebody in the head before he shot me? That's what I heard."

## B. Testimony From Witnesses Who Participated in the Subsequent Police Investigation.

¶9      City of Milwaukee Police Department Detective Kenton Burtch, who arrested Perry for the May 25th crimes, testified to the following. At the time of his arrest, Perry was in possession of a key fob that corresponded to a car parked outside a residence on 28th Street in Milwaukee. On the day of Perry's arrest, law enforcement officers were given consent to search that 28th Street residence for evidence relating to the robbery, and a Ruger SR9c model, 9 millimeter handgun was found at the 28th Street residence.

¶10      City of Milwaukee Police Detective Tony Castro testified to the following. I.G. was shown a photo array, and I.G. identified Perry in the photo array as the man who shot the gun at him. I.G. told Detective Castro that I.G. "had seen the full face of the shooter." When Detective Castro asked I.G. to explain why he was confident in his identification of Perry, I.G. stated that "it was everything, the whole face" and that "the eyes … struck him the most." Detective Castro also testified that Perry admitted to officers that he had been at the 28th Street residence previously.

¶11    City of Milwaukee Police Detective Thomas Obregon testified that four spent bullet casings were recovered from the scene of the robbery. Those bullet casings were later tested at the Wisconsin State Crime Laboratory.

¶12    Xai Xiong, a firearms and tool mark examiner with the Wisconsin State Crime Lab, testified that the four spent bullet casings recovered from the robbery scene were fired from the Ruger SR9c found at the 28th Street residence.

### C. Perry's Testimony.

¶13    Perry testified and denied that he was near the area where the robbery occurred on May 25, 2016. Perry admitted to knowing an individual who lives at the 28th Street residence. Perry testified that he had been to that residence "occasionally to play basketball," including at the time he was arrested in June 2016, but Perry denied that he was ever inside the residence. At the time of his arrest, Perry was in possession of a vehicle key fob, but Perry testified that he had been "holding [the key fob] for somebody" and did not know what vehicle the key fob was connected with.

### II. Procedural History.

¶14    To repeat, during I.G.'s cross-examination, I.G. stated, unprompted: "Didn't [Perry] shoot somebody in the head before he shot me? That's what I heard." Perry's trial counsel immediately objected and requested that I.G.'s statement be stricken from the record.[3] The trial court ordered I.G.'s statement

---

[3] The State does not dispute on appeal, and did not dispute at trial, that the unprompted statement by I.G. was not responsive to a pending question, and the jury was properly instructed to disregard that comment.

(continued)

"stricken from the record." That is somewhat of a misnomer because, of course, I.G.'s statement was, and is, in the trial record. But, more importantly for this appeal, the trial court immediately directed the jury "to disregard that comment."

¶15 Later on that same day of the trial, Perry's trial counsel requested a mistrial based on I.G.'s statement. His counsel argued:

> I don't believe that there's any way that I can remedy the jury hearing [I.G.'s statement], even though we told the jury to disregard it. They heard it. You cannot disregard something you hear, even though the court says to. And there's no way I can remedy it without going into many issues that would be improper.

¶16 The trial court denied Perry's request and gave the following reasons:

> At this point it's one stray comment by one witness, very brief, [that] didn't go into any details or long winded narrative.
>
> I will give an instruction, and [the] jurors will be commanded to put that out of their minds.
>
> Even now, I may change my mind if something like that happens again, I realize the [S]tate did not elicit that response, no one elicited that response, he just blurted it out on his own.
>
> With the one stray, short comment from one witness, I think we're fine for now.
>
> I will give an instruction, we'll talk about a proper instruction, when the time comes, for now we'll continue on.

---

Going forward, we will refer to I.G.'s improper statement that gave rise to the motion for a mistrial as "I.G.'s statement."

¶17    At the conclusion of the evidence, the trial court proposed reading to the jury the standard instruction on stricken testimony. *See* WIS JI—CRIMINAL 150. In response, Perry's trial counsel stated that he was "not sure that [the instruction] covers sufficiently what transpired," but acknowledged that the "instruction is the only one really available without causing more harm." With the other jury instructions, the trial court read to the jury WIS JI—CRIMINAL 150 which states: "During the trial the court ordered certain testimony to be stricken. Disregard all stricken testimony. It is not to be considered in your deliberations."

¶18    The jury found Perry guilty of armed robbery, as a party to a crime, and first-degree recklessly endangering safety, as a party to a crime. The jury found Perry not guilty of the charge of felon in possession of a firearm, and the jury did not find that the first-degree recklessly endangering safety crime was committed with a dangerous weapon as the State charged.

¶19    Following the jury's verdict, but prior to sentencing, a person who the parties agree was a juror at Perry's trial wrote a letter to the trial court. The specifics of that letter will be discussed later in this opinion. The trial court shared the juror's letter with counsel for the State and Perry's trial counsel.

¶20    Perry's trial counsel made a second request for a mistrial prior to the sentencing, and that request was denied. The matter proceeded to sentencing.

## DISCUSSION

¶21    Below we set forth our standard of review and the legal principles governing a motion for a mistrial. We then address the parties' arguments.

## I.  Standard of Review and Governing Legal Principles.

¶22   A motion for a mistrial is committed to the sound discretion of the trial court.  *State v. Bunch*, 191 Wis. 2d 501, 506, 529 N.W.2d 923 (Ct. App. 1995).  We reverse a trial court's ruling on such a motion only if there is a "clear showing of an erroneous exercise of discretion."  *Id.*   "A trial court properly exercises its discretion when it has examined the relevant facts, applied the proper standard of law, and engaged in a rational decision-making process."  *Id.* at 506-07.

¶23   On appeal, we are obliged to independently review the record, and we must uphold the trial court's discretionary determination if the record provides a basis for the trial court's decision.  *See State v. Pharr*, 115 Wis. 2d 334, 343, 340 N.W.2d 498 (1983).  Additionally, when reviewing a trial court's ruling on a motion for mistrial, we accord the court's ruling differing levels of deference.  *See Bunch*, 191 Wis. 2d at 507.  The levels of deference depend on the reasons underlying the mistrial request.  *See id.*  When, as is the case here, a mistrial request is based "on grounds not related to the State's alleged laxness or overreaching, we give the trial court's ruling 'great deference.'"  *Id.* (citation omitted).

¶24   When ruling on a motion for a mistrial, "[t]he trial court must determine, in light of the whole proceeding, whether the basis for the mistrial request is sufficiently prejudicial to warrant a new trial."  *Id.* at 506.  Not all problems require granting of a mistrial, and "the law prefers less drastic alternatives, if available and practical."  *See id.* at 512.

## II.  The Trial Court Did Not Erroneously Exercise Its Discretion.

### A.  Forfeiture of Arguments.

¶25    Perry argues, initially, that the trial court erroneously exercised its discretion in denying his first motion for a mistrial because the trial court failed to consider certain factors.[4]

¶26    First, Perry asserts that "the trial court failed to consider the nature of the underlying allegations" against Perry and, as a result, the court did not appreciate that I.G.'s statement was improper "prejudicial character or propensity evidence" under WIS. STAT. § 904.04(2).  Second, Perry contends that the trial court should have considered the "legal elements" of the charged crimes and, because the trial court did not, that "bias[ed] the jury's ability to fairly consider the State's case."  Third, Perry argues that, given the felon in possession of a firearm charge against Perry, the trial court failed to consider "direct evidence" that Perry was already a felon and, as a result, the jury was "primed" to attach more significance to I.G.'s statement.  Fourth, Perry asserts that the trial court "should have also considered the evidentiary picture" and, because the trial court did not do so, the court did not recognize the weakness of the State's case and the increased risk that I.G.'s statement caused the jury to find him guilty.

¶27    We begin our analysis by rejecting any contention from Perry that the trial court was unaware of, or failed to consider, the following:  the underlying charges against Perry, including the felon in possession of a firearm charge; the

---

[4] Perry appeals only the trial court's denial of the first motion for a mistrial. Accordingly, we do not address whether the trial court erroneously exercised its discretion in denying his second motion for a mistrial.  *See State v. Allen*, 2004 WI 106, ¶26 n.8, 274 Wis. 2d 568, 682 N.W.2d 433 (stating an issue not argued is forfeited).

9

elements of those charged crimes; and the evidence elicited at trial. The trial court presided over the trial and was undoubtedly aware of those facts.

¶28 Moreover, Perry has forfeited the opportunity to raise these arguments on appeal because Perry's trial counsel did not ask the trial court to draw any inferences or conclusions from the facts mentioned in the immediately preceding paragraph. Perry does not dispute the assertion of the State in its response brief that the arguments summarized in ¶26, above, were not raised before the trial court. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (stating that a proposition asserted by a respondent on appeal and not disputed by the appellant's reply brief may be taken as admitted). Also, it is a well-established legal principle that a defendant cannot complain on appeal that the trial court failed to consider an argument that the defendant did not ask the trial court to consider. *See State v. Huebner*, 2000 WI 59, ¶11-12, 235 Wis. 2d 486, 611 N.W.2d 727; *State v. Robles*, 157 Wis. 2d 55, 59-60, 458 N.W.2d 818 (Ct. App. 1990).

¶29 Perry contends that there was no forfeiture in this circumstance because it is not required "to have every single word written in an appellate brief to be first spoken aloud by the trial counsel at the time of the motion" to avoid a forfeiture argument. That is correct as far as it goes, but Perry misses the mark with his assertion. This is not a situation in which Perry's trial counsel worded an argument in the trial court somewhat differently than the same argument in Perry's appellate briefing. Here, the arguments described above that Perry makes on appeal were not made at all in the trial court. The trial court did not have an obligation to make, *sua sponte*, arguments Perry now asserts the trial court should have considered. *See State v. Delgado*, 2002 WI App 38, ¶12, 250 Wis. 2d 689, 641 N.W.2d 490. Put another way, the trial court's role in addressing Perry's

motion for a mistrial did not require the trial court to state for Perry every possible argument in support of Perry's position.[5]

¶30    Accordingly, the trial court did not erroneously exercise its discretion by failing to consider arguments Perry makes for the first time on appeal, and those arguments are forfeited.  *See Segall v. Hurwitz*, 114 Wis. 2d 471, 489, 339 N.W.2d 333 (Ct. App. 1983) (refusing to address issues on appeal that were not raised before the circuit court).

### B.  The Curative Jury Instruction Was Not Insufficient.

¶31    Perry next argues that the trial court erroneously exercised its discretion because the curative instruction directing the jury to disregard I.G.'s statement was insufficient to erase the possible prejudice from that statement. Perry concedes that Wisconsin law prefers less drastic alternatives to a mistrial. *See Bunch*, 191 Wis. 2d at 512.   Nonetheless, Perry asserts that a curative instruction in this instance was not sufficient to "fully cure[]" the prejudice resulting from I.G.'s statement.

¶32    We begin with the presumption that the jury follows instructions given to it by the trial court.  *See State v. Pharm*, 2000 WI App 167, ¶31, 238 Wis. 2d 97, 617 N.W.2d 163; *State v. Deer*, 125 Wis. 2d 357, 364, 372 N.W.2d 176 (Ct. App. 1985).  We reject Perry's efforts to overcome that presumption.

---

[5] Perry argues further that we should not conclude that he has forfeited those arguments because, according to Perry, an ineffective assistance of counsel claim against his trial counsel would be "impractical, unworkable, and superfluous."  But, Perry gives no basis for that assertion other than his conclusory statement, and we reject his unsupported argument. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (stating we do not consider unsupported arguments).

¶33     In an attempt to demonstrate that the jury considered I.G.'s statement in spite of the trial court's instruction, Perry relies on the juror's post-trial letter to the court. Perry argues that the letter is "suggestive evidence" that the jurors ignored the trial court's curative instruction. The State responds that we may not consider the letter because of WIS. STAT. § 906.06(2). We agree with the State for the following reasons.

¶34     The juror's letter states in relevant part:

> I was a member of the jury for the … trial in which we found Mr. Perry guilty on two of the three charges he was facing. That jury experience and our decision has troubled me ever since and has caused me to question the jury and trial process. In hindsight, our decision made no sense. To have found Mr. Perry guilty of Counts 1 and 2 … and not guilty of Count 3 resulted from what amounted to a compromise.
>
> Five jurors felt there was reasonable doubt while a number of jurors felt they could never find him not guilty. I'm embarrassed to say it wasn't even obvious to me at the time what we were doing. To appease the individuals who were never going to consider a finding of not guilty, the jurors felt they could "live with" the verdict of guilty but without the weapon enhancer charge. The logic behind this is senseless and I believe we found Mr. Perry guilty erroneously based on the evidence we were presented.
>
> The main factor was [I.G.'s] testimony and identification of Mr. Perry as the person who shot at him. For the jury to find Mr. Perry guilty of recklessly endangering safety … but not be the individual holding the gun, reflects our faulty logic. If we trusted [I.G's] testimony, then we should not have difficulty putting the gun in Mr. Perry's hand. Since some jurors struggled to come to the conclusion that Mr. Perry fired the gun, in essence, a compromise was made.
>
> I also wonder how much implicit bias played in our decision making. Since Mr. Perry had a prior felony conviction, the gaps in the information we were given with which to determine his fate, led many to assume he was just

a "bad dude" so while the evidence was not all that strong, it was "good enough" to find a young, black male who had been in previous trouble, guilty once again. [I.G.'s] comment at the end of his testimony that he heard Mr. Perry had previously tried to shoot someone in the head may also have had an impact on some. Though we only briefly discussed it and knew it was to be disregarded, once such a statement is planted, can it truly be erased from biases one may unknowingly hold?

¶35 WISCONSIN STAT. § 906.06(2) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may the juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received.

¶36 There is no question that, as phrased in WIS. STAT. § 906.06(2), the juror's letter concerned "the juror's mental processes" that influenced "the juror to assent or dissent from the verdict." Indeed, that is the explicit reason Perry cites to the letter, and Perry gives us no viable reason not to apply that statute. Consequently, § 906.06(2) applies to this circumstance and prohibits us from considering the juror's letter.

¶37 Next, Perry relies on the jury's verdict in an attempt to demonstrate that the jury did not follow the trial court's curative instruction to disregard I.G.'s statement. Perry argues that the jury's findings that he was not guilty of being a felon in possession of a weapon but guilty of the remaining charges is not logical

because the State presented only evidence that Perry was the gunman. Perry asserts that a "reasonable supposition" is that I.G.'s statement "distorted [the jury's] verdict." However, as pointed out by the State, logical consistency in the verdict is not required in multi-count criminal verdicts. *State v. Mills*, 62 Wis. 2d 186, 191, 214 N.W.2d 456 (1974) (stating "[i]t has been universally held that logical consistency in the verdict as between the several counts in a criminal information is not required"). Furthermore, Perry's argument is, at best, speculative of what the jury did or considered in its deliberations, and this court need not address speculative arguments. *See State v. Tarantino*, 157 Wis. 2d 199, 217, 458 N.W.2d 582 (Ct. App. 1990).

¶38 For those reasons, we reject Perry's arguments that the trial court's curative instruction was insufficient.

### C. The Trial Court's Decision Was Reasonable.

¶39 As noted earlier, when reviewing a trial court's decision denying a defendant's motion for a mistrial, the question before us is whether no reasonable court could have determined that, in the light of the entire proceeding, the pertinent event is not sufficiently prejudicial to warrant a new trial. *See State v. Jeske*, 197 Wis. 2d 905, 912-13, 541 N.W.2d 225 (Ct. App. 1995); *Bunch*, 191 Wis. 2d at 506. It is not enough that a reasonable judge could have concluded differently than the trial court did here. *See Jeske*, 197 Wis. 2d at 912-13.

¶40 I.G.'s statement was made once on the second day of three days of testimony. Perry acknowledges that I.G.'s statement was not elicited by the prosecution but was, instead, "blurted" out by I.G. unprompted and that, at Perry's trial counsel's request, immediately after the statement was made, the trial court ordered the jury "to disregard that comment." I.G.'s statement was not repeated,

14

and what he said did not directly relate to any other evidence at trial. At the end of trial, the jury was given the standard jury instruction for stricken testimony, which directs the jury to "[d]isregard all stricken testimony. It is not to be considered in your deliberations." *See* WIS JI—CRIMINAL 150. That jury instruction did not, at the request of Perry's trial counsel, mention I.G.'s statement and, as previously stated, the jury is presumed to have followed that instruction. *See **Deer***, 125 Wis. 2d at 364.

¶41 Furthermore, the evidence, which we now summarize, supported the jury's findings of guilt regardless of I.G.'s statement. I.G. identified Perry as one of the robbers and as the man who fired gunshots at him. The jury heard testimony from M.R. that a man holding a gun assisted in stealing her purse and fired gunshots, and testimony from A.R. identifying Perry as one of the robbers. In addition, the jury heard testimony that spent bullet casings recovered from the scene of the robbery were fired from a gun that was found at a residence that Perry admitted to officers that he frequented. That evidence was sufficient for the jury to find Perry guilty of armed robbery and first-degree recklessly endangering safety, both as a party to a crime. *See* WIS. STAT. §§ 943.32(2), 941.30(1), 939.05.

¶42 Under these circumstances, we are unable to conclude that "no reasonable judge, acting on the same facts and underlying law, could reach the same conclusion" as the trial court did. *See **Jeske***, 197 Wis. 2d at 913. Accordingly, the trial court did not erroneously exercise its discretion when it denied Perry's motion for a mistrial.

**CONCLUSION**

¶43 For the foregoing reasons, the judgment of the trial court is affirmed.

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.