IN RE the DETENTION OF Frederick L. PHARM:

STATE of Wisconsin, Petitioner-Respondent,

v.

Frederick L. PHARM, Respondent-Appellant.†

Court of Appeals

*No. 98–1542. Submitted on briefs February 1, 2000.—Decided June 13, 2000.*

## 2000 WI App 167

(Also reported in 617 N.W.2d 163.)

†Petition to review denied.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Jack E. Schairer*, assistant state public defender.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Sally L. Wellman*, assistant attorney general.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. CURLEY, J. Frederick L. Pharm appeals from the judgment finding him to be a sexually violent person under WIS. STAT. § 980.01(7),[1] and an order committing him to a secure mental health facility. Pharm also appeals from an order denying his postcommitment motion. Pharm argues that: (1) the chapter 980 petition should be dismissed because there is no indication in the record that the Department of Corrections (DOC), as the agency with the authority to release Pharm from custody, notified the Department of Justice (DOJ) under WIS. STAT. § 980.015 that Pharm met the criteria for commitment, nor is there any indication that, pursuant to WIS. STAT. § 980.02, the DOJ declined to file a chapter 980 petition before the District Attorney's office filed the petition; (2) the chapter 980 petition was untimely because it was filed on his mandatory release date; (3) he was convicted of a crime that is no longer contained in the criminal code and, therefore, this underlying conviction cannot serve as a predicate offense for a chapter 980 prosecution; (4) the chapter 980 petition was filed with a criminal case number and not a civil case number, thereby depriving the circuit court of subject matter jurisdiction; and (5) trial counsel was ineffective for failing to object to specific testimony given by one of the State's expert witnesses, and for failing to address issues regarding the definition of "substantial probability."

¶ 2. We are not persuaded by any of Pharm's arguments. We conclude that: (1) Pharm failed to assert that the petition should be dismissed because the notice provisions of WIS. STAT. §§ 980.015 and

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise specified.

980.02 were not followed in the trial court and, thus, we decline to address his first argument; (2) the chapter 980 petition was timely filed; (3) Pharm's underlying conviction for indecent behavior with a child constitutes a predicate offense under WIS. STAT. § 980.01(6); (4) filing the chapter 980 petition under a criminal case number did not affect the circuit court's subject matter jurisdiction; and (5) Pharm's trial counsel was not ineffective for failing to object to the testimony of the State's expert witness or for failing to argue for a specific definition of "substantial probability." Therefore, we affirm.

## I. BACKGROUND.

¶ 3. On June 3, 1988, Pharm was convicted of one count of indecent behavior with a child, and one count of sexual perversion, contrary to WIS. STAT. §§ 944.11(3) (1973–74) and 944.17 (1973–74).[2] Pharm was sen-

---

[2] We note that Pharm was charged under the 1973–74 version of the Wisconsin Statutes, but he was not convicted until 1988. The facts surrounding Pharm's criminal history are complicated and not always clear based on the record submitted to this court. Piecing together the available information, it appears that in 1975, Pharm committed the acts that led to the criminal charges for indecent behavior with a child and sexual perversion. Before Pharm was arrested on the sexual assault charges, he fled to Nevada. In 1976, Pharm was charged with committing a murder and a rape in Nevada. Although no court documents or other records from Nevada are included in the record, the limited information provided indicates that the rape charges were eventually dropped; however, Pharm was convicted of murder and sentenced to life imprisonment in 1977. Near the end of his sentence for murder in Nevada, it was discovered that Pharm had been using an alias in Nevada and that a warrant for his arrest had been issued in Wisconsin under his real name. In 1988, he was extradited to Wisconsin

tenced to ten years of imprisonment on count one, and five years consecutive on count two. On Pharm's mandatory release date, October 28, 1997, the District Attorney's office filed a chapter 980 petition alleging that Pharm is a sexually violent person who had been convicted of sexually violent offenses. The petition further alleged that Pharm suffers from a mental disorder that predisposes him to engage in acts of sexual violence, and that it is substantially probable that he will engage in acts of sexual violence in the future. The trial court ordered that Pharm be detained and that a probable cause hearing be held within seventy-two hours to determine whether there was probable cause to believe that Pharm is a sexually violent person under chapter 980.

¶ 4. Immediately preceding the probable cause hearing, Pharm brought a motion to dismiss the chapter 980 petition as untimely. Pharm argued that because the petition had been filed on his mandatory release date, it had not been filed within ninety days of the date of his discharge or release under the predicate offense, as required by WIS. STAT. § 980.02(2). The trial court disagreed, finding that the petition was filed within ninety days of Pharm's release and, therefore, the petition was timely. The trial court denied Pharm's motion and proceeded with the probable cause hearing. At the conclusion of the hearing, the trial court found probable cause to believe that Pharm is a sexually violent person within the meaning of WIS. STAT. § 980.01(7). The trial court ordered that Pharm be detained pending trial, for further evaluation to determine whether he is a sexually violent person.

where he was tried and convicted for the 1975 crimes and it was his mandatory release date for those crimes that triggered this litigation.

¶ 5. Pharm's jury trial commenced on February 23, 1998. Dr. Linda Cooper, Dr. Dennis Doren, and Pharm's ex-wife testified for the State. Pharm's ex-wife testified that Pharm frequently had violent outbursts of both a sexual and a non-sexual nature. Dr. Cooper testified regarding her conclusions that Pharm suffered from anti-social personality disorder, and pedophilia with an attraction to females, nonexclusive.[3] Dr. Doren also testified regarding his evaluation of Pharm, and the conclusions he reached based on the evaluation. Dr. Doren concluded that Pharm suffered

---

[3] Dr. Cooper testified that she had prepared two reports regarding Pharm's eligibility for commitment under chapter 980. In the first report, Dr. Cooper concluded that Pharm suffered from an anti-social personality disorder, and that he was sexually attracted to females, non-exclusive, which, Dr. Cooper testified, meant that Pharm is attracted to both adult and juvenile females. Dr. Cooper also testified that at the time she completed the first report she strongly suspected that Pharm also suffered from pedophilia, but that she didn't have sufficient information to confirm her suspicions. In this first report, Dr. Cooper concluded that Pharm was "at fairly high risk" of reoffending, but that she did not believe "that he was at a substantially high risk." Therefore, Dr. Cooper did not recommend that Pharm be committed

However, Dr. Cooper then testified regarding a second report she had prepared. After preparing the first report, Dr. Cooper learned of new information regarding Pharm's history. Dr. Cooper became aware that Pharm had sexually assaulted a victim previously unknown to Dr. Cooper. Armed with this new information, Dr. Cooper reevaluated Pharm's case and concluded that the new information confirmed her belief that Pharm suffers from pedophilia as well as anti-social personality disorder. Dr. Cooper amended her report to reflect this conclusion and recommended that Pharm be committed under chapter 980.

from the following conditions: sexual sadism, pedophilia, and personality disorder, not otherwise specified, with anti-social features. In explaining that he resolved the factual disputes between Pharm and his ex-wife in favor of the ex-wife, Dr. Doren testified that he found Pharm's ex-wife, but not Pharm, to be credible. Dr. Doren produced a chart marked as an exhibit which detailed reasons for his conclusions that Pharm's ex-wife was more believable in her recounting of past events. Both Dr. Cooper and Dr. Doren testified to a reasonable degree of professional certainty that Pharm was a substantial risk to commit additional sexually violent offenses.

¶ 6. Merlin Noremberg, an instructor at the Fox Lake Correctional Institution, and Dr. Samuel Friedman, a psychologist, testified on Pharm's behalf. Mr. Noremberg, testified regarding Pharm's training and skill as a cabinetmaker and millworker. Dr. Friedman testified, based on his review of various records and an interview with Pharm, that Pharm was a credible and reliable individual who did not demonstrate any clearcut evidence of sexual deviancy. Finally, Dr. Friedman expressed his opinion, to a reasonable degree of psychological certainty, that Pharm is not a sexually violent person.

¶ 7. The jury returned a verdict finding Pharm to be a sexually violent person, and the trial court entered a final order committing Pharm to a secure mental health facility. Pharm filed a motion seeking summary reversal with this court, claiming that the petition was not timely filed, the predicate offenses were not sexually violent offenses under chapter 980, and that trial counsel was ineffective for failing to request a definition of "substantial probability." This court denied the motion with leave for further consideration on the mer-

its once the full record was before us. Pharm then filed a motion for stay and remand to the trial court for consideration of his ineffective assistance of counsel claims. That motion was granted and the case was remanded to the trial court.

¶ 8. On remand, Pharm brought a postcommitment motion which alleged that trial counsel was ineffective for: failing to argue that "substantial probability" required a definition and that "extreme likelihood" or "highly likely" should have been substituted for "considerably more likely than not to occur"; failing to object to Dr. Doren's exhibit and testimony regarding Pharm's credibility; and failing to object to the filing of the chapter 980 petition with a criminal case number. The trial court denied Pharm's postcommitment motion without a hearing, and this court denied Pharm's motion to compel a *Machner* hearing.[4] Pharm now appeals the denial of his postcommitment motion.

## II. ANALYSIS.

A. We decline to address several of Pharm's arguments raised for the first time on appeal.

¶ 9. Pharm argues that the trial court erred when it denied his motion to dismiss the petition. Immediately preceding the probable cause hearing, Pharm brought an oral motion to dismiss the chapter 980 petition, arguing that: (1) the petition was not

---

[4] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 903 (Ct. App. 1979).

timely filed,[5] and (2) the appended report by Dr. Cooper was not timely and did not contain new information to support her revised opinion regarding Pharm's risk of recidivism. The trial court denied Pharm's motion. On appeal Pharm again contends that the trial court erred when it denied his motion to dismiss the petition; however, Pharm now argues for the first time that the petition should have been dismissed because: (1) it does not reflect that there had been any notice to the DOJ regarding Pharm's case pursuant to WIS. STAT. § 980.015, and (2) the DOJ did not decline to file a chapter 980 petition before the District Attorney's office filed a petition, as required by WIS. STAT. § 980.02(1). We note that Pharm failed to raise either of these claims in his motion to dismiss and, therefore, because he raises these arguments for the first time on appeal they are not properly before this court. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980) (an appellate court will generally not review an issue raised for the first time on appeal). Thus, we decline to address these issues.

B. The chapter 980 petition was timely filed.

¶ 10. Pharm argues that the chapter 980 petition was not timely filed. WISCONSIN STAT. § 980.02(2)(ag) requires that chapter 980 petitions be filed "within 90 days of discharge or release, on parole or otherwise, from a sentence that was imposed for a conviction for a

---

[5] We note that on appeal Pharm fails to raise this issue in relation to his motion to dismiss; instead, he raises it as a separate substantive issue. Because Pharm raised this issue before the trial court he has preserved it for purposes of this appeal and we shall consider it in the next section as a separate substantive issue.

sexually violent offense." In the instant case the District Attorney's office filed the chapter 980 petition on Pharm's mandatory release date. Pharm argues that under *State v. Bollig*, 222 Wis. 2d 558, 587 N.W.2d 908 (Ct. App. 1998), his mandatory release date is excluded from the calculation of the ninety-day time limit. *See id.* at 572 ("When a time limit is measured from an event, the day on which the event takes place is excluded from the computation."). Pharm concludes that because his mandatory release date must be excluded from the ninety-day time limit, the petition, which was filed on his mandatory release date, was not timely and, therefore, the trial court lacked competency to proceed.

¶ 11. Failure to comply with the ninety-day time limit contained in WIS. STAT. § 980.02(2)(ag) affects the trial court's competency to proceed. *See State v. Zanelli*, 212 Wis. 2d 358, 368, 569 N.W.2d 301 (Ct. App. 1997). A court's competency to proceed is a question of law, which we review *de novo*. *See Bollig*, 222 Wis. 2d at 563. To resolve this issue, we must interpret and apply § 980.02(2)(ag) and WIS. STAT. § 990.001(4)(a) and (d), which also presents this court with a question of law, which we review *de novo*. *See State v. Carpenter*, 197 Wis. 2d 252, 275, 541 N.W.2d 105 (1995). After conducting an independent review of the record, we are satisfied that the petition was timely filed and, therefore, the trial court was competent to proceed.

¶ 12. In order to determine whether the petition was timely filed under WIS. STAT. § 980.02(2)(ag), this court must determine whether Pharm's mandatory release date was "within 90 days of [his] discharge or release." This question turns on the proper method of calculating the ninety-day time limit. Pharm argues that his mandatory release date should be excluded

from the calculation of the ninety-day limit because, he reasons, it is the day on which an event is to take place, or, in other words, the first day of the time period. We disagree.

¶ 13. The proper method of calculating statutory time limits is set forth in WIS. STAT. § 990.001(4). Section 990.001(4)(a) provides that, "[t]he time within which an act is to be done or proceeding had or taken shall be computed by excluding the first day and including the last." Section 990.001(4)(d) provides that when a time limit is measured from an event or a day on which an event occurred, the day on which the event took place shall be excluded from the calculation. Essentially Pharm argues that his release date is the day on which the event occurred and, as such, his release date is the first day of the ninety-day period. Therefore, Pharm contends that because his release date is the first day of the ninety-day period, it must be excluded from the calculation. Pharm is mistaken. We look to *Pufahl v. Williams*, 179 Wis. 2d 104, 506 N.W.2d 747 (1993), for instruction.

¶ 14. In *Pufahl*, our supreme court affirmed a court of appeals' decision reversing the circuit court, which held that an action was barred if brought on the anniversary date of the accrual of that action. The court held that the day that a cause of action accrues is not to be included in computing the time period for statute of limitation purposes. *See id.* at 107. To draw an analogy from *Pufahl*, Pharm is asking this court to conclude that his mandatory release date is the day the "cause of action accrues" and, therefore, the release date should be excluded for purposes of calculating the ninety-day limit. We cannot so conclude. Pharm is attempting to apply a conventional method of calculating time limits, such as that used in determining when

110

a statute of limitations expires, to the ninety-day period involved here; however, such a conventional application does not work. The *Pufahl* analogy demonstrates the fundamental difference between calculations of conventional statutes of limitations, and the calculation of the ninety-day time limit involved here.

¶ 15. The court in *Pufahl* held that the day that the cause of action accrues is not included in calculating the time limit, but the last day of the time period is included. In conventional statute of limitations cases like *Pufahl*, an occurrence triggers the beginning of a time period that runs prospectively to a fixed point in time. However, here the calculation of the time period in WIS. STAT. § 980.02(2)(ag) must be made retrospectively from an occurrence—the release date—backwards in time to a date ninety days before the release date. That date is then fixed in time. As the inmate is serving his sentence, once he reaches that fixed date, i.e., the ninety days before release, the time begins to run prospectively until he reaches his release date. Thus, the date fixed in time ninety days prior to the release date is the date on which the "cause of action accrues" and, therefore, that date is excluded from the ninety-day time limit, but the last day, the release day, is included. *See also* WIS. STAT. § 801.15(1)(b).[6] Thus, we conclude that the chapter 980

---

[6] WISCONSIN STAT. § 801.15(1)(b) provides:

Notwithstanding ss. 985.09 and 990.001(4), in computing any period of time prescribed or allowed by chs. 801 to 847, by any other statute governing actions and special proceedings, or by order of the court, the day of the act, event or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included . . . .

petition, filed on Pharm's mandatory release date, was timely filed.

C. Pharm's underlying conviction for indecent behavior with a child constitutes a predicate offense.

¶ 16. Following the evidentiary phase of the trial, Pharm again moved to dismiss the petition, this time arguing that the indecent behavior with a child and sexual perversion charges, as set out in the 1973–74 statutes, do not constitute predicate offenses under chapter 980. The State conceded that sexual perversion did not constitute a predicate offense. However, the State asserted that although the statutory section prohibiting indecent behavior with a child had been repealed, the conduct described by the statute was still prohibited under a different statutory section. The trial court agreed and, consistent with *State v. Irish*, 210 Wis. 2d 107, 565 N.W.2d 161 (Ct. App. 1997), denied Pharm's motion to dismiss.

¶ 17. Pharm argues that the trial court erred when it denied his motion to dismiss. Pharm asserts that his conviction for indecent behavior with a child contrary to WIS. STAT. § 944.11(3) (1973–74) does not fall within the definition of a sexually violent offense and, therefore, cannot serve as a predicate offense for a chapter 980 petition. Pharm contends that the legislature "[did] not provide that [his] conviction for indecent liberties almost a quarter century earlier under a repealed statute would be a predicate offense for a chapter 980 prosecution." Pharm concludes that the trial court erroneously found that, under *Irish*, indecent behavior with a child constituted a sexually violent offense for purposes of filing a chapter 980 petition. We disagree.

112

¶ 18. In *Irish*, this court first "determine[d] that the statutory definition of 'Sexually violent offense' found in ch. 980 [ ] is ambiguous." *Id.* at 110. We then examined the scope and history of the crime at issue, which had been repealed and recreated, and we concluded that the legislature intended "that anyone convicted under the former statute. . .could be convicted under the new one." *Id.* at 111. We concluded that this was so because the changes in the statute "broaden[ed] rather than restrict[ed] the scope of the offense." *Id.* Finally, this court looked to chapter 980's historical background and "broad temporal scope" to support our conclusion. *Id.* at 112–13. Applying the same reasoning to the instant case leads to the same conclusion and, therefore, we are satisfied that the legislature intended to include convictions for indecent behavior with a child under the former statute in the definition of "sexually violent offense."

██

¶ 19. Extrapolating from *Irish*, we conclude the legislature clearly intended to include, within the definition of "sexually violent offense," the conduct prohibited under a previous version of a statute enumerated in WIS. STAT. § 980.01(6), as long as the conduct prohibited under the predecessor statutes remains prohibited under the current enumerated statute. The record reveals that Pharm's conviction for indecent behavior with a child concerned Pharm's placing his penis in a seven-year-old girl's mouth, in violation of WIS. STAT. § 944.11(3) (1973–74). Pharm's conduct, prohibited under a different statutory section in the 1973–74 Wisconsin Statutes, remains prohibited under a statutory section currently listed as a predicate offense in § 980.01(6). In 1975, the legislature repealed § 944.11, *see* Laws of 1975, ch. 184, § 8, and

created WIS. STAT. § 940.225, *see id.* at § 5, which prohibited, *inter alia*, sexual contact or intercourse with a person twelve years of age or under. *See* WIS. STAT. § 940.225(1)(d) (1977). The legislature defined sexual intercourse as including an act of fellatio. *See* WIS. STAT. § 940.225(5)(c)(1977). Then, in 1987, the legislature repealed § 940.225, *see* 1987 Wis. Act 332, § 30, and created WIS. STAT. § 948.02(1), *see id.* at § 55, prohibiting sexual intercourse, including fellatio, with a person under the age of thirteen years. Section 948.02(1) is specifically enumerated as a predicate offense under § 980.01(6). Therefore, Pharm's conduct, which was prohibited under an earlier statutory section, remains prohibited under the current enumerated statutory section.

¶ 20. Moreover, Pharm's interpretation of the statute would render certain sections of the statute meaningless and lead to absurd results. *Accord Peters v. Menard, Inc.*, 224 Wis. 2d 174, 189, 589 N.W.2d 395 (1999) (statutes should be construed so as to avoid absurd results); *State v. Setagord*, 211 Wis. 2d 397, 427, 565 N.W.2d 506 (1997) ("Statutes are to be construed to avoid rendering part of the statute meaningless or superfluous."). If we were to adopt Pharm's construction of the statute, the only individuals who would meet the criteria as sexually violent persons under WIS. STAT. § 980.01, would be those individuals convicted under any of the currently enumerated statutory sections. Individuals engaging in similar conduct but convicted under different statutory sections either prior to the creation of the enumerated sections or at some point in the future after those sections have been amended or repealed, would not be subject to chapter 980 proceedings. Such a

result was not intended by the legislature and is clearly absurd.

¶ 21. WISCONSIN. STAT. § 980.13 supports our interpretation. Section 980.13 provides: "This chapter applies to a sexually violent person regardless of whether the person engaged in acts of sexual violence before, on or after June 2, 1994." Clearly the legislature expected the sexually violent person commitment proceedings to include an individual who committed acts of sexual violence before June 2, 1994, and thus this individual might have been sentenced before enactment of the current enumerated statutory sections. Applying Pharm's view, we would be required to conclude that even if an individual committed acts prohibited under the current statutes, but prior to the enactment of chapter 980, that individual could not be the subject of commitment proceedings. Adopting Pharm's construction would render § 980.13 meaningless in those situations. We would also be forced to arrive at the same conclusion in the future if and when the current enumerated statutory sections would ever be repealed. We find this interpretation to be unreasonable.

¶ 22. Finally, such a narrow interpretation of WIS. STAT. § 980.01(6) contradicts the underlying purpose of chapter 980. Chapter 980 addresses the public's concern over the danger posed by sexually violent persons who are released from their sentences and the legislative attempts to protect the public from sexually violent persons who remain at substantial risk to re-offend, and to create appropriate settings for treating these sexually violent persons. *See State v. Carpenter*, 197 Wis. 2d 252, 276, 451 N.W.2d 105 (1995); *see also id.* at 277 (Bablitch, J., concurring). Pharm fails to demonstrate, and this court fails to discern, how chap-

ter 980's underlying purpose is served by such a narrow construction. On the contrary, the public is protected and sexually violent individuals are treated by construing chapter 980 to be applicable to all individuals who engaged in behavior prohibited under the statutes currently listed in § 980.01(6), and those individuals convicted of similar conduct under some other earlier statutory section.

> D. Filing the chapter 980 petition with a criminal case number did not affect the court's subject matter jurisdiction.

¶ 23. Pharm contends that "a civil action has never been timely filed in this case" because the District Attorney's office filed the original chapter 980 petition with a criminal case number instead of a civil case number. Pharm asserts that a civil case number is required in a chapter 980 proceeding and, therefore, the defect constitutes a fundamental error. Pharm concludes that, because the filing defect constitutes a fundamental error, the trial court lost "competency to exercise its subject matter jurisdiction." We disagree.

¶ 24. Pharm correctly asserts that "[a] commitment under chapter 980 is a civil commitment proceeding." However, there is nothing in chapter 980 to support Pharm's argument that the circuit court lacks subject matter jurisdiction on a chapter 980 petition unless the petition is filed under a civil case number and reviewed in the civil branch of the court.[7] Wisconsin's circuit courts are courts of general jurisdic-

---

[7] We are mindful of the fact that in Milwaukee County, for security reasons, it may be more prudent to conduct chapter 980 proceedings in the secure courtrooms used for criminal trials

tion. *See* WIS. STAT. § 753.03; *see also Mack v. State*, 93 Wis. 2d 287, 294, 286 N.W.2d 563 (1980). "No circuit court is without subject matter jurisdiction to entertain actions of any nature whatsoever." *Mueller v. Brunn*, 105 Wis. 2d 171, 176, 313 N.W.2d 790 (1982); *see also* WIS. STAT. § 753.03 ("The circuit courts have the power to hear and determine, within their respective circuits, all civil and criminal actions and proceedings unless exclusive jurisdiction is given to some other court."). Further a circuit court reviewing a chapter 980 petition must adhere to the rules of civil procedure contained in chapters 801 to 847. *See State v. Brown*, 215 Wis. 2d 716, 718–19, 573 N.W.2d 884 (Ct. App. 1997) (holding that there is no language in chapter 980 prescribing a different procedure than that embodied in chapters 801 to 847, which govern all civil actions and procedures). Inasmuch as Pharm has not argued that the trial court did not follow the proper procedure for reviewing chapter 980 petitions, we assume that the trial court acted properly. As long as the court conducting the proceedings follows the rules of civil procedure as indicated above, it is immaterial whether the petition is filed with a civil or criminal case number, or whether a judge currently assigned to the civil or criminal branch presides over the proceedings.

E. Pharm's trial counsel was not ineffective.

¶ 25. Pharm argues that his trial counsel was ineffective for: (1) failing to object to an exhibit and testimony offered by Dr. Doren regarding Pharm's

---

rather than the non-secure courtrooms assigned to civil branches.

credibility, and (2) failing to argue that "substantial probability" required a specific definition.[8]

¶ 26. The familiar two-pronged test for ineffective assistance of counsel claims requires defendants to prove (1) deficient performance and (2) prejudice. *See Strickland v. Washington*, 466 U.S. 668, 690 (1984); *see also State v. Sanchez*, 201 Wis. 2d 219, 236, 548 N.W.2d 69 (1996) (holding that the *Strickland* analysis applies equally to ineffectiveness claims under the state constitution). If the defendant has failed to prove one prong, we need not address the other prong. *See Strickland*, 466 U.S. at 697. We will strongly presume that counsel has rendered adequate assistance. *See id.* at 690. Finally, on appeal, the trial court's findings of fact will be upheld unless they are clearly erroneous, *see State v. Pitsch*, 124 Wis. 2d 628, 634, 369 N.W.2d 711 (1985), but proof of either the deficiency or the prejudice prong is a question of law which we review *de novo, see id.* at 634.

¶ 27. If Pharm's postcommitment motion alleges facts which, if true, would entitle him to relief, the trial court has no discretion and must hold an evidentiary hearing. *See State v. Bentley*, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996). However, if the motion fails to allege sufficient facts, presents only conclusory allegations, or

---

[8] In his postcommitment motion, Pharm also claimed that trial counsel was ineffective for failing to argue that the circuit court lacked competency to proceed because the petition was filed with a criminal case number instead of a civil case number. However, on appeal Pharm does not include this argument with his claims of ineffective assistance of counsel; rather, he raises the issue as a substantive claim of error. In the preceding section we addressed the merits of Pharm's substantive claim and concluded that the trial court was competent to proceed.

if the record conclusively demonstrates that Pharm is not entitled to relief, the trial court has the discretion to deny the motion without a hearing. *See id.* at 309–10. We will only reverse this decision upon an erroneous exercise of discretion. *See id.* at 311. We are satisfied that the trial court properly exercised its discretion in denying Pharm's postcommitment motion for ineffective assistance of counsel, without a hearing.

### 1. Dr. Doren's testimony

¶ 28. Dr. Doren testified that, in resolving the conflicts between Pharm's and Pharm's ex-wife's recitation of the events, he found Pharm's ex-wife to be a credible witness, believing her version of the incidents, and disbelieving Pharm's. Dr. Doren also used a chart to explain why his conclusions were supportable. Pharm argues that Dr. Doren's testimony and the exhibit "constituted an improper comment on [his] truthfulness," citing *State v. Jensen*, 147 Wis. 2d 240, 432 N.W.2d 913 (1985), and *State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984). Pharm asserts that the determination that he would not testify was not made until the close of the State's case, and that it was decided he would not testify because of Dr. Doren's testimony. Pharm maintains that, "[b]y telling the jury in the state's case that Dr. Doren thought he had very poor credibility and giving numerous specific instances [of Pharm's untruths], [Dr. Doren] was essentially informing the jury [that] if [ ] Pharm gave a statement in court he should not be believed." Pharm concludes that not only did this testimony constitute an impermissible comment on his truthfulness, but it also chilled his ability to testify in his own defense and, therefore, his trial counsel was ineffective for failing to

object to the admission of this testimony at trial. We disagree.

¶ 29. In its decision denying Pharm's postcommitment motion, the trial court found that Pharm's trial counsel was not ineffective for failing to object to Dr. Doren's testimony because, had a proper objection been made, the trial court determined it would have allowed the testimony. The trial court asserted that under WIS. STAT. §§ 907.03–907.05, an expert, Dr. Doren in this instance, may explain the facts and data upon which he is basing his opinion. The trial court observed that Dr. Doren had interviewed Pharm and examined the available records in order to form an opinion about whether Pharm met the definition of a sexually violent person under WIS. STAT. Ch. 980. The trial court found that Pharm's statements regarding his prior crimes and sexual assaults were relevant to Dr. Doren's opinion that Pharm suffered from a mental disease or defect. The trial court asserted that "Dr. Doren substantiated his *belief* that Pharm was untruthful in some respects with specific documentation based on his interview with Pharm and the documented statements Pharm made to authorities." The trial court concluded that, because Dr. Doren's expert testimony was admissible under §§ 907.03–907.05, in order to explain the facts and data he relied on in forming his opinion that Pharm met the definition of a sexually violent person, it would have allowed the testimony over an objection by defense counsel. Therefore, Pharm's trial counsel was not ineffective for failing to object to Dr. Doren's testimony. We agree.

¶ 30. In *Jensen*, a case cited by Pharm, the court concluded that although an expert witness can not offer an opinion regarding whether the complainant had in fact been victimized, or ultimately whether the complainant was telling the truth, an expert witness can offer an opinion if the testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Jensen*, 147 Wis. 2d at 256; *see also State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 92 (Ct. App. 1984) (expert's opinion that there "was no doubt whatsoever" that the complainant was an incest victim constituted an impermissible opinion that the complainant was telling the truth). Here, the trial court correctly recognized that Dr. Doren was called to offer his expert opinion regarding whether Pharm met the statutory definition of a sexually violent person. Dr. Doren concluded that Pharm did meet the definition of a sexually violent person, and we are satisfied that his testimony fell within the permitted parameters as it was necessary to assist the jury in understanding the evidence he relied on in arriving at this conclusion. Therefore, *Jensen*, supports the trial court's conclusion that Dr. Doren's testimony was properly admissible, and that any objection by defense counsel would not have been successful.

■

¶ 31. Moreover, the prejudicial effect, if any, of Dr. Doren's testimony was diluted because the trial court explicitly instructed the jury that it (the jury) was the sole judge of a witness's credibility. The jury was also instructed that expert testimony regarding the information relied on in forming opinions could be considered only as it related to the expert witness's credibility and the weight to be given to the expert's

testimony. This court should presume that the jury followed the instructions given to them by the trial court. *See State v. Smith,* 170 Wis. 2d 701, 719, 490 N.W.2d 40 (Ct. App. 1992).

¶ 32. For these reasons, we conclude that the trial court properly determined that Pharm's trial counsel was not ineffective for failing to object to Dr. Doren's testimony.

### 2. *"Substantial probability."*

¶ 33. Finally, Pharm argues that trial counsel was ineffective for failing to argue that "substantial probability" should be defined as "highly likely" under *State v. Zanelli,* 212 Wis. 2d 358, 569 N.W.2d 301 (Ct. App. 1997),[9] or "extreme likelihood" consistent with

---

[9] This court acknowledges the supreme court's decision in *State v. Curiel,* 227 Wis. 2d 389, 597 N.W.2d 697 (1999), in which the court held that the term "substantially probable," as used in WIS. STAT. ch. 980, is unambiguous and must be defined as "much more likely than not." However, what effect, if any, the court's decision in *Curiel* has on *State v. Zanelli,* 212 Wis. 2d 358, 569 N.W.2d 301 (Ct. App. 1997), as well as the instant action, is unclear. First, we note that the *Curiel* opinion was filed in May of 1999, well after the trial court in the instant action decided Pharm's postcommitment motion. Next, the *Curiel* opinion is devoid of any reference or citation to *Zanelli,* and to the extent that *Curiel* calls *Zanelli* into question, it does so by implication. Further, we note that *Zanelli* has never been overruled, reversed, questioned or criticized; in fact our supreme court twice declined to review the decision. *Review denied by State v. Zanelli,* 215 Wis. 2d 423, 576 N.W.2d 279 (1997); *following appeal after remand review denied by State v. Zanelli,* 228 Wis. 2d 173, 602 N.W.2d 759 (1999). Therefore, we shall presume that our original decision in *Zanelli* remains good law and we shall apply that decision to Pharm's claim in the instant appeal.

chapter 51. Pharm posits that at a minimum counsel should have objected when the trial court provided no definition at all. Pharm contends that "[c]ounsel's failure to make such challenges or at least to present an argument based on *Zanelli*, to the trial court, falls below an objective standard of reasonableness." We reject Pharm's argument.

■

¶ 34. Pharm's assertion that his counsel was ineffective for failing to challenge the pattern jury instruction on the grounds that it does not define "substantially probable" is conclusory. In *Zanelli*, we held that it is not error or an erroneous exercise of discretion for a court to use WIS JI—CRIMINAL 2502, which does not define the term "substantially probable." *Zanelli*, 212 Wis. 2d at 372–75 (comparing failure to define "substantially probable" with failure to define "beyond a reasonable doubt" in a criminal case in that the constitution neither prohibits trial courts from defining the terms, nor requires trial courts to define the terms); *but see State v. Curiel*, 227 Wis. 2d 389, 597 N.W.2d 697 (1999) (holding that the term "substantially probable" as used in ch. 980 is unambiguous and must be defined as "much more likely than not" consistent with the common and appropriate usage of the term). Consequently, any allegation by Pharm that the trial court would have upheld a challenge to the jury instruction, had it been made, is conclusory. Thus, we conclude that with regard to Pharm's claims of ineffective assistance of trial counsel, first, the record conclusively demonstrates that Pharm is not entitled to relief and, second, Pharm merely presents conclusory allegations and, therefore, the trial court properly exercised its discretion in denying Pharm's postconviction motion without a hearing. For the reasons stated, this court affirms.

*By the Court.*—Judgment and orders affirmed.