COURT OF APPEALS
DECISION
DATED AND FILED

February 1, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP2139-CR**

Cir. Ct. No. **2018CF831**

STATE OF WISCONSIN

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

THOMAS J. BAGGESEN,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Racine County: TIMOTHY D. BOYLE, Judge. *Affirmed.*

Before Gundrum, P.J., Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Thomas J. Baggesen appeals from a judgment of conviction for three counts of sexually assaulting a person under twelve years of age in violation of WIS. STAT. § 948.02(1)(b) (2019-20)[1] and from an order resolving his motion for postconviction relief.[2]  Baggesen argues that the trial court erred by refusing to declare a mistrial after a witness for the prosecution told the jury that he was incarcerated.  We conclude that the record supports a finding that the curative jury instructions (both immediately following the statement and right before jury deliberation) were sufficient to remove any prejudice and that the trial court's denial of Baggesen's request for a mistrial was a proper exercise of discretion.  Accordingly, we affirm.

¶2     There were three witnesses who testified at Baggesen's jury trial.  The first, Vanessa,[3] was Baggesen's accuser and the granddaughter of his wife, Martha, to whom he had been married since before Vanessa was born.  Vanessa was nineteen years old at the time of trial.  She testified that when she was six years old, she and her younger brother would spend the night at her grandmother and Baggesen's house approximately once per month.  She said that on each visit, she and her brother alternated where they would sleep.  One of them would sleep on the second floor of the house, where Martha slept, and the other would sleep in the basement, where Baggesen slept.  On three different occasions when she was spending the night in the basement, Vanessa testified, Baggesen "climb[ed] on top of [her] and [held her] down and insert[ed] his fingers into [her] vagina."  After each incident,

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] Baggesen does not challenge the decisions reflected in the trial court's order, entered on November 23, 2021, granting in part and denying in part his motion for postconviction relief.

[3] To protect the identity of the victim, we use a pseudonym.  *See* WIS. STAT. RULES 809.19(1)(g) and 809.86.

she said, he threatened to hurt Martha in various violent ways if Vanessa told anyone what happened.

¶3    On cross-examination, Vanessa testified that she did not tell anyone about Baggesen's abuse until she was sixteen years old. A friend of hers had described a bad relationship that she was in, and Vanessa told the friend about the sexual abuse she endured from both a boyfriend and her step-grandfather, Baggesen. This conversation with the friend led to Vanessa disclosing the abuse to a school counselor and then, several weeks later, to a videotaped interview at a child advocacy center. In response to questioning from Baggesen's counsel about the quality of her memory at the time of the recorded interview as compared to at trial, Vanessa testified that "some things are more clear today than when I recalled them in the video."

¶4    When the State asked Vanessa on redirect why some things were more clear at trial than they were in the interview recorded several years earlier, Vanessa mentioned stress and fear she was going through and said that "knowing that [Baggesen]'s incarcerated makes it easier for me to recall things because I am able to actually not have to worry about that fear" that he would hurt her grandmother or come find her. Baggesen immediately objected. The trial court held a sidebar outside the presence of the jury during which Baggesen requested a mistrial, arguing that Vanessa's statement presented a "bias issue." The court took the matter under advisement and took some time to research the issue.

¶5    After noting that "[t]here was no specific case law cited for the Court to review," the trial court denied Baggesen's request. The court explained that it had independently reviewed the law related to mistrial and determined that "it's the Court's discretion based upon information that is presented whether or not there is

prejudice to the point where there is no other alternative but to declare the mistrial" and that it did "not find that any potential prejudice associated with [Vanessa's statement] rises to a level to the extent that it's necessary to declare a mistrial." The court then took several steps to cure the situation. It instructed Vanessa that she was prohibited from mentioning that Baggesen was in custody and, after calling the jury back into the courtroom, immediately provided the jury with a curative instruction that they were to disregard any testimony about whether or not Baggesen may have been incarcerated "as that testimony [was] not to be considered by [the jury] in any way, shape or form as evidence in this case. It is being completely stricken from the Court record."

¶6      The trial continued, with Baggesen testifying in his own defense. He explained that he had a falling out with his wife early in their marriage, and that is why she slept upstairs and he slept in the basement even when the children were not staying with them. In conflict with Vanessa's testimony, he said that at the time in question, "the girls always slept with the girls and the boys slept with the boys." Baggesen denied that Vanessa ever spent the night in the basement with him during the time in question. He further testified that Vanessa fabricated her entire story, and, although he couldn't think of a reason why she would lie, he did note that she made the accusations against him about a year after Martha had gotten a restraining order against him by alleging that he had threatened Martha.

¶7      Finally, the State called Martha as a rebuttal witness. She corroborated Vanessa's version of the sleeping arrangements, testifying that up until Vanessa was ten years old, Vanessa often slept in the basement with Baggesen. She also testified that when Vanessa was around ten years old and Martha put a stop to her sleeping in the basement with Baggesen out of a sense that it was inappropriate for a more mature girl to do so, Baggesen oddly "got very angry."

4

¶8 After the close of evidence, the trial court again instructed the jury that it was to disregard stricken testimony. It further instructed the jury that every person accused of a crime is presumed innocent and that a finding of not guilty was required unless the jury determined that the presumption was overcome by evidence that showed guilt beyond a reasonable doubt. The jury deliberated and then returned a guilty verdict on all three counts, and the trial court subsequently sentenced Baggesen to the mandatory minimum twenty-five years of initial confinement and ten years of extended supervision for each count, to be served concurrently.[4] Baggesen appeals, arguing that the trial court's denial of his request for a mistrial based on Vanessa's disclosure of his incarceration warrants reversal of his conviction and a new trial.

¶9 Baggesen is correct that evidence of a defendant's incarceration status is generally inadmissible because of its potential to impair the presumption of innocence so fundamental to our system of justice. *See, e.g.*, *Estelle v. Williams*, 425 U.S. 501, 504-05 (1976). Some evidence related to incarceration may be so prejudicial that its introduction warrants a mistrial. *See State v. Castillo*, No. 2020AP983-CR, unpublished slip op. ¶57 (WI App June 29, 2021) (finding that inadmissible testimony from two different witnesses warranted a mistrial because it could have led a reasonable jury to conclude that a defendant on trial for sexual assault of a minor had previously been incarcerated for sexually assaulting other young girls).[5] But not every mistake requires a new trial, and "the law prefers less drastic alternatives, if available and practical." *State v. Givens*, 217 Wis. 2d 180,

---

[4] Baggesen incorrectly states in his brief that terms are to be served consecutively.

[5] Unpublished opinions may not be cited for precedential value, but authored unpublished opinions issued on or after July 1, 2009, may be cited for persuasive value. *See* WIS. STAT. RULE 809.23(3)(a), (b).

191, 580 N.W.2d 340 (Ct. App. 1998) (citation omitted). "Whether to grant a mistrial is a decision that lies within the sound discretion of the [trial] court." ***State v. Doss***, 2008 WI 93, ¶69, 312 Wis. 2d 570, 754 N.W.2d 150; *see also* ***State v. Bunch***, 191 Wis. 2d 501, 506, 529 N.W.2d 923 (Ct. App. 1995). "The trial court must determine, in light of the whole proceeding, whether the basis for the mistrial request is sufficiently prejudicial to warrant a new trial." ***Bunch***, 191 Wis. 2d at 506.

¶10    Our review of a trial court's discretionary decision to deny a motion for mistrial depends on the reason for the defendant's motion. ***Id.*** at 507. If the request for mistrial was based on "the State's overreaching or laxness," we apply strict scrutiny to the trial court's decision "out of concern for the defendant's double jeopardy rights." ***Id.*** But where, as here, a defendant's request is based on an error not caused by the State, we give "great deference" to the trial court's ruling. ***Id.*** (citation omitted). We reverse only on a clear showing of an erroneous exercise of discretion, i.e., a clear showing that no reasonable court could have found the error insufficiently prejudicial to warrant a new trial. *See* ***id.***; ***State v. Jeske***, 197 Wis. 2d 905, 912-13, 541 N.W.2d 225 (Ct. App. 1995).

¶11    We will discuss each of Baggesen's two arguments in turn. First, Baggesen argues that Vanessa's disclosure was sufficiently prejudicial such that it "cannot be remedied by a curative instruction and cannot be unheard by the jury," likening it to the United States Attorney's statements to the jury in ***Dunn v. United States***, 307 F.2d 883, 885-86 (5th Cir. 1962), where the attorney included improper personal opinion and facts not in evidence when he told the jury that "the case was the most flagrant he had ever tried and was replete with fraud." In that Fifth Circuit case, which is not binding on this court, the trial court's vague jury instruction to "disabuse your minds of that statement" was deemed insufficient to cure the

6

prejudice. *Id.* at 885-86 ("[I]f you throw a skunk into the jury box, you can't instruct the jury not to smell it.").

¶12    As Baggesen acknowledges, however, curative instructions like the ones given in his case are presumed to erase the prejudice from erroneously admitted evidence. *E.g.*, *State v. Jennaro*, 76 Wis. 2d 499, 508, 251 N.W.2d 800 (1977); *State v. Pharm*, 2000 WI App 167, ¶31, 238 Wis. 2d 97, 617 N.W.2d 163. To overcome that presumption, he offers argument—and no evidence—that Vanessa's statement was "especially prejudicial" because the trial was short, with the State's case relying primarily on Vanessa's testimony, and because the statement was tied to Vanessa's credibility, with Vanessa stating that she was able to recall some details of Baggesen's abuse more clearly because she did not have to fear that he would hurt her or her grandmother due to his incarceration.

¶13    We disagree that this is enough to overcome the presumption that the jury followed the trial court's curative instructions. *See State v. Sigarroa*, 2004 WI App 16, ¶24, 269 Wis. 2d 234, 674 N.W.2d 894 (2003) ("Where the trial court gives the jury a curative instruction, this court may conclude that such instruction erased any possible prejudice, unless the record supports the conclusion that the jury disregarded the trial court's admonition."). We note that curative instructions have been deemed sufficient to overcome prejudice when a defendant's incarceration status was known to jurors because the defendant was seen by a juror in shackles, *State v. Knighten*, 212 Wis. 2d 833, 844-45, 569 N.W.2d 770 (Ct. App. 1997), and when a defendant's criminal history was improperly disclosed, *Sigarroa*, 269

Wis. 2d 234, ¶¶24-25.[6] In this case, the trial court's instructions were thorough and specific; it immediately told the jury to "completely disregard" any testimony about whether Baggesen may have been incarcerated and not to consider that testimony "in any way, shape or form." The court reiterated that stricken testimony was not to be considered in its final jury instructions.

¶14    We also note that, although Vanessa's testimony as to the abuse was, as Baggesen says, "uncorroborated"—no one else is alleged to have witnessed the assaults—Baggesen's wife, Martha, did corroborate Vanessa's testimony (and contradicted Baggesen's denial) that Vanessa sometimes slept downstairs during the time in question. The jury believed Vanessa over Baggesen. We will not disturb the trial court's determination, which could reasonably be made on this record, that the jury made that credibility determination without undue prejudice based on the comment about Baggesen being incarcerated. The trial court was in the best position to "assess[] the impact and effect" of the inadmissible statement (and the court's curative instructions) "on the outcome of the proceedings." *Bunch*, 191 Wis. 2d at 510 (citation omitted).

¶15    Second, Baggesen argues that the trial court applied the wrong legal standard when it determined that it should deny the request for mistrial unless "there is prejudice to the point where there is no other alternative but to declare the

---

[6] Baggesen cites two Wisconsin cases in which, he says, a curative instruction was "found insufficient to remedy a jury hearing improper evidence at trial" despite a lack of record evidence that the jurors ignored the instruction. Neither of these persuade us that the curative instruction in his case was insufficient. Baggesen's citation to *State v. Payano*, 2009 WI 86, ¶104, 320 Wis. 2d 348, 768 N.W.2d 832, is confusing. In that case, our supreme court affirmed a trial court's decision to admit evidence of "other acts" even without a cautionary jury instruction because its probative value outweighed its danger of unfair prejudice. *Id.*, ¶¶100-104. Further, besides being an unpublished, nonbinding decision, *State v. Castillo*, No. 2020AP983-CR, unpublished slip op. ¶57 (WI App June 29, 2021), dealt with the combined prejudice resulting from improper evidence of other acts *and* incarceration status.

mistrial." *See* *State v. Davis*, 2001 WI 136, ¶28, 248 Wis. 2d 986, 637 N.W.2d 62 ("An erroneous exercise of discretion results when the exercise of discretion is based on an error of law."). The parties agree that under the correct standard, articulated in *Bunch*, the trial court should determine, "in light of the whole proceeding, whether the basis for the mistrial request is sufficiently prejudicial to warrant a new trial." 191 Wis. 2d at 506.

¶16     The record shows that this is what the trial court did, rather than applying a "per se" rule as Baggesen asserts. It weighed the prejudice to Baggesen resulting from Vanessa's statement in the context of the entire proceeding—"under [the] circumstances and from the jury's standpoint"—and found that "any potential prejudice" did not "rise[] to a level to the extent that it's necessary to declare a mistrial." Our case law encourages courts to consider "less drastic alternatives, if available and practical," to mistrial. *Bunch*, 191 Wis. 2d at 512. We conclude that the trial court properly assessed the prejudice, considered its alternatives, and exercised its discretion to decide that a curative instruction was sufficient to overcome any prejudice from Vanessa's improper disclosure of Baggesen's incarceration status. Under the deferential standard we apply to the decision before us, which is grounded in the notion that the trial court is in the best position to evaluate what occurred, we must affirm if we can perceive a reasonable basis for the court's decision. *Bunch*, 191 Wis. 2d at 510; *Jeske*, 197 Wis. 2d at 912-13. We find that to be the case here.

¶17     We conclude that the record supports a finding that the curative jury instructions (both immediately following the statement and right before jury deliberation) were sufficient to remove any prejudice resulting from Vanessa's disclosure of Baggesen's incarceration and that the trial court's denial of Baggesen's request for a mistrial was a proper exercise of discretion. We therefore reject

Baggesen's arguments regarding the trial court's denial of his request for mistrial and affirm his conviction.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.