COURT OF APPEALS
DECISION
DATED AND FILED

September 10, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP189-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2022CF265

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

C. T. P.-B.,

DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Chippewa County: STEVEN H. GIBBS, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Christopher[1] appeals a nonfinal order denying his petition for reverse waiver into juvenile court.[2] The circuit court concluded that Christopher had not met his burden to show that transferring jurisdiction to the juvenile court would not depreciate the seriousness of Christopher's offenses. On appeal, Christopher argues that the court erroneously exercised its discretion in that regard. We disagree and affirm the order denying Christopher's petition for reverse waiver.

## BACKGROUND

¶2 On April 27, 2022, the State charged Christopher with first-degree intentional homicide, first-degree sexual assault, and first-degree sexual assault of a child under age thirteen with resulting great bodily harm. According to the criminal complaint, the victim, a ten-year-old girl, was reported missing on April 24, 2022, after failing to return from her aunt's home. The victim's bicycle was located in a wooded area, and her body was discovered nearby the following day. Investigators at the scene noted that the victim was naked from the waist down and had suffered injuries consistent with blunt force trauma to the head.

¶3 During a forensic autopsy the next day, a pathologist observed bite marks on the victim's left buttock; anal tearing; biological evidence consistent with a sexual assault; and blunt force trauma on the left side of the victim's face.

---

[1] For ease of reading, we refer to the appellant in this matter using a pseudonym, rather than his initials.

[2] We granted Christopher's petition for leave to appeal a nonfinal order on February 20, 2024.

Christopher's DNA was later found on swabs taken from the victim's mouth, anus, and left buttock.

¶4      Police interviewed Christopher, who was fourteen years old at the time, on April 26, 2022. Christopher told police that he and the victim left a house together, with the victim on her bicycle and Christopher on a hoverboard. Christopher admitted that when they left the house, "it was already his intention to rape and kill" the victim.

¶5      Christopher and the victim were initially on a trail, but Christopher asked the victim to go exploring off the trail, and they proceeded into the woods. After they left the trail, Christopher punched the victim in the stomach, knocking her to the ground, and struck her in the head approximately three times with a stick. Christopher then straddled the victim, who was lying on her back, and strangled her until he believed she was dead. At that point, Christopher removed the victim's pants and began trying to have sex with her. Christopher told the police that he remembered biting the victim, but he could not recall where.

¶6      At some point during his assault of the victim, Christopher became scared and fled the area. He returned home, showered, and put his dirty clothes in the laundry. When Christopher heard that the victim was reported missing, he decided that he needed to hide her body better. He therefore returned to the location of her body, dragged her body a few feet, and covered it with leaves.

¶7      Because Christopher was charged with first-degree intentional homicide, contrary to WIS. STAT. § 940.01 (2021-22),[3] an adult criminal court was

---

[3] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

vested with exclusive original jurisdiction over him. *See* WIS. STAT. § 938.183(1)(am); *see also* § 938.183(1)(ar) (granting an adult criminal court exclusive original jurisdiction over "[a] juvenile specified in par. … (am) who is alleged to have attempted or committed a violation of any state criminal law in addition to [first-degree intentional homicide,]" if the violations "may be joined under [WIS. STAT. §] 971.12(1)"). On September 1, 2022, based upon the parties' stipulation, the court found that the allegations in the criminal complaint provided probable cause as to the first-degree intentional homicide charge, and it bound Christopher over for further proceedings. *See* WIS. STAT. § 970.032(1).

¶8 Christopher subsequently filed a petition for reverse waiver, asking that his case be transferred to juvenile court. *See* WIS. STAT. § 970.032(2). To obtain reverse waiver, a juvenile must prove all three of the following factors by a preponderance of the evidence:

> (a) That, if convicted, the juvenile could not receive adequate treatment in the criminal justice system.
>
> (b) That transferring jurisdiction to the court assigned to exercise jurisdiction under [WIS. STAT.] chs. 48 and 938 would not depreciate the seriousness of the offense.
>
> (c) That retaining jurisdiction is not necessary to deter the juvenile or other juveniles from committing the violation of which the juvenile is accused under the circumstances specified in [WIS. STAT. §] 938.183(1)(a), (am), (ar), (b) or (c), whichever is applicable.

Sec. 970.032(2)(a)-(c). The reverse waiver statute "presumes that the child will be kept in the adult system unless the court determines" that all three of the statutory factors are satisfied. *State v. Verhagen*, 198 Wis. 2d 177, 188, 542 N.W.2d 189 (Ct. App. 1995).

¶9 The circuit court held a three-day hearing on Christopher's reverse waiver petition during August 2023. Christopher called ten witnesses to testify at the hearing; the State called none. The parties also stipulated to the admission of the victim's autopsy report and a Wisconsin State Crime Laboratory Report regarding DNA analysis of samples taken from the victim's body.

¶10 Generally, Christopher's witnesses at the reverse waiver hearing testified regarding Christopher's mental health diagnoses and treatment needs, as well as the treatment and programming available in the juvenile and adult correctional systems, respectively. We do not provide a comprehensive summary of the witnesses' testimony here; instead, we highlight certain testimony that is particularly relevant to the arguments raised on appeal.

¶11 Casey Gerber, the director of the Wisconsin Department of Corrections Office of Juvenile Offender Review, testified at the reverse waiver hearing regarding the services and treatment available at Lincoln Hills School, a "Type 1" juvenile facility.[4] Gerber confirmed that a juvenile placed at Lincoln Hills is assigned to a mental health clinician within twenty-four hours and is provided individual therapy and medication management.

¶12 Gerber also testified regarding the Serious Juvenile Offender (SJO) program, which she described as "a juvenile adjudication that offers a longer term of supervision than the standard correctional order for certain statutorily eligible offenses." Gerber explained that one type of SJO program is the SJO-A, which is

---

[4] Gerber explained that a "Type 1" facility is a facility for juveniles who are ordered to serve "longer period[s] of confinement than at a detention facility." Gerber described a Type 1 facility as being "more restrictive" than a detention facility, explaining that a Type 1 facility is locked and fenced and that juveniles are not permitted to leave the facility.

limited to first-degree intentional homicide offenders. Under the SJO-A program, the juvenile is subject to a dispositional order until he or she turns twenty-five, with "a minimum confinement of one year before the juvenile can be released from the Type 1 facility back to the community." Gerber testified that while it is possible for a juvenile in the SJO-A program to be confined at Lincoln Hills until age twenty-five, that "probably won't happen."

¶13 At the reverse waiver hearing, Christopher also presented testimony and reports from three psychologists—Dr. Michael Caldwell, Dr. Steven Benson, and Dr. James Garbarino. Caldwell diagnosed Christopher with autism spectrum disorder (ASD) and an unspecified anxiety disorder. He opined that the charged offenses were "a product of [Christopher's] mental disorder" and that Christopher's "risk for future aggression is directly related to the management of this mental disorder." Caldwell also discussed Christopher's exposure to internet pornography, which caused Christopher to experience "obsessive sexual thoughts" that were "distressing to him and were outside of his ability to control or modulate." He opined that Christopher's exposure to pornography "probably played some role" in his offenses.

¶14 Caldwell stated that he could not provide any assurances that Christopher would not commit similar offenses in the future. He explained that, as a result of Christopher's ASD, Christopher had "a diminished capacity to understand the harm that [his conduct] would cause to the victim and how the victim might respond."

¶15 Caldwell further opined that "[a]ppropriate treatment" for Christopher "should include a comprehensive treatment plan that would include individual therapy, and an assessment for psychotropic medications." According

to Caldwell, "effective treatment services that [Christopher] needs are not typically available in the adult corrections system" but "can be readily accessed with a juvenile court disposition." Caldwell also stated that research "has consistently shown that transferring juveniles into the adult system generally increases the risk of future violence in the juvenile, and does nothing to deter other adolescents from offending."

¶16 Benson diagnosed Christopher with ASD and persistent depressive disorder. He opined that the "primary causes" of Christopher's offenses were "the untreated presence of [ASD] and [Christopher's] three-year obsession with and compulsive watching of online pornography … culminating in the viewing of increasingly violent pornographic videos in the months prior to" the victim's death. Benson characterized Christopher's offenses as a "one-time occurrence within the context of [ASD] and the compulsive viewing of increasingly violent pornographic videos." According to Benson, the type of treatment that Christopher requires—specifically, "the use of applied behavioral analysis for the treatment of [ASD] on a daily basis"—is not available in the adult correctional system.

¶17 Garbarino, in turn, opined that Christopher "is an appropriate candidate for treatment in a structured residential adolescent treatment program rather than long-term adult incarceration because the crime[s] for which he is charged reflected an 'adolescent crisis' rather than the culmination of a long-standing pattern of delinquent and aggressive behavior in childhood." Garbarino explained that Christopher's "immaturity of thought and feeling characteristic of adolescents generally" was "compounded by the disability of being on the 'autism spectrum' and his immersion in the social toxicity of internet-based pornography." According to Garbarino, Christopher "does not

require placement in an adult facility which focuses on punishment and the control of dangerous individuals" but instead needs "the developmental[ly] appropriate approach of a structured residential treatment program to assist him in maturing and sexually 'detoxifying' to the point where he can function safely in the community." Garbarino therefore opined that placing Christopher in "a juvenile structured residential treatment program until age 25" would be "a sound decision."

¶18 Garbarino also addressed deterrence, opining that "[i]t is well established that teenagers are generally not affected by conventional *adult* ideas of deterrence" and that laws increasing the threat of sentencing and incarceration as an adult have no effect on youth crime rates. Garbarino therefore concluded that there is "no reason to believe that dealing with [Christopher] in the adult criminal justice system would have any deterrent effect on other juveniles." Garbarino further opined that research on specific deterrence "consistently finds that adolescent offenders transferred to criminal court have higher rates of reoffending than … those retained in juvenile court."

¶19 Finally, Garbarino opined that granting Christopher's petition for reverse waiver would not depreciate the seriousness of the offenses. Garbarino explained that Christopher is "devastated" by his crimes and "certainly appreciates the seriousness" of his offenses. According to Garbarino, transferring Christopher's case to juvenile court "will not signal to him a depreciation of the seriousness of his crime[s]" but instead "will give him hope that he can be redeemed and brought to the light, rather than being cast out into darkness." Garbarino also opined that reverse waiver would not depreciate the seriousness of Christopher's offenses from the perspective of the community at large because keeping Christopher in adult court would have no general deterrent effect.

¶20 The circuit court ultimately issued a twenty-two-page written decision denying Christopher's petition for reverse waiver. The court concluded that Christopher had met his burden of proof with respect to the first and third reverse waiver factors. Addressing the first factor—whether, if convicted, Christopher could receive adequate treatment in the criminal justice system, *see* WIS. STAT. § 970.032(2)(a)—the court explained that both Benson and Caldwell had testified that Christopher "requires intensive one-on-one therapy that is not available in the adult prison system" and that he "would need, at a minimum, weekly treatment sessions," which the adult correctional system cannot accommodate on a long-term basis. Based on that testimony, the court concluded Christopher had met his burden to prove, by a preponderance of the evidence, that he "could not receive adequate treatment in the criminal justice system."

¶21 Turning to the third factor—whether retaining jurisdiction is necessary to deter the juvenile or other juveniles from committing the charged offenses, *see* WIS. STAT. § 970.032(2)(c)—the circuit court noted that the issue of deterrence is subject to "conflicting views." The court explained:

> Keeping [Christopher] in the adult system for at least twenty years on a life sentence would surely deter him from committing future offenses.[5] Will it deter other juvenile

---

[5] Two of the charges against Christopher—first-degree intentional homicide and first-degree sexual assault of a child under age thirteen with resulting great bodily harm—are Class A felonies. *See* WIS. STAT. §§ 940.01(1)(a), 948.02(1)(am). The penalty for a Class A felony is life imprisonment. WIS. STAT. § 939.50(3)(a). However, when sentencing a person to life imprisonment, a circuit court "shall make an extended supervision eligibility date determination … and choose one of the following options:" (1) the person is eligible for release to extended supervision after serving twenty years; (2) the person is eligible for release to extended supervision on a specified date set by the court after serving more than twenty years; or (3) the person is not eligible for release to extended supervision. WIS. STAT. § 973.014(1g)(a). Thus, if convicted of either Class A felony, Christopher would be subject to life imprisonment, but with the possibility of being eligible for release to extended supervision after twenty years.

> offenders from committing offenses? Statistics lend credence to both views on this. Teenagers process information and make decisions different from adults. Punishment is always a determent to bad behavior.

Nevertheless, the court also cited Caldwell's testimony "that prosecution in adult court does not provide specific deterrence and actually increases the risk of re-offending in the future" and that "there is no scientific basis to conclude that adult court prosecution provides general deterrence." In apparent reliance on that testimony, the court determined that Christopher had met his burden of proof with respect to the third reverse waiver factor.

¶22 Conversely, however, the circuit court determined that Christopher had not met his burden of proof with respect to the second reverse waiver factor—whether transferring jurisdiction to the juvenile court would depreciate the seriousness of the offenses. *See* WIS. STAT. § 970.032(2)(b). Citing *State v. Kleser*, 2010 WI 88, ¶72, 328 Wis. 2d 42, 786 N.W.2d 144 (citing *State v. Dominic E.W.*, 218 Wis. 2d 52, 58 n.6, 579 N.W.2d 282 (Ct. App. 1998)), the court noted that the determination of seriousness under this factor is based on "the specific facts and circumstances of the case" and that "weighing of the facts by the [circuit] court is implicit in the reverse waiver statute."

¶23 The circuit court then stated that the following facts were relevant to its assessment of the seriousness of Christopher's offenses. On the day of the ten-year-old victim's murder, Christopher convinced the victim to leave a residence and go down a trail with him. When Christopher left the residence, it was already his intention to rape and kill the victim. Christopher admitted that his physical assault of the victim was "vicious and brutal in nature, involving punching the victim, knocking the victim down and hitting the victim with a stick."

10

¶24 The victim's autopsy report noted evidence of "homicidal violence," which included the following blunt force trauma to the head and body: contusions and abrasions of the face and head; contusion of the left lower lip mucosa; contusions and abrasions to the chest, abdomen, and legs; contusions of the left arm and right foot; abrasions of the hands and feet; and subgaleal hemorrhage. The evidence of homicidal violence also included evidence of sharp force injury to the anterior neck, evidence of probable sharp force injury to the left side of the jaw, and evidence of possible sharp force injury on the inner aspect of the right thigh.

¶25 Christopher admitted that after violently attacking the victim, he strangled her until he believed that she was dead. The autopsy report noted evidence of "manual strangulation," including: abrasions on the chin, jaw, and anterior neck; petechiae of the upper and lower eyelids, upper and lower conjunctivae, and sclerae of both eyes; and hemorrhage of the anterior neck muscles.

¶26 Christopher also admitted biting the victim, removing her pants, and trying to have sex with her. The autopsy report noted evidence of sexual assault, including: lacerations of the anus; a bite mark on the left buttock; white mucoid material in the rectum/sigmoid colon; contusions of the rectal/sigmoid mucosa; and hemorrhage of the serosa of the rectum/sigmoid colon.

¶27 After reciting these facts, the circuit court noted that two of the charges against Christopher are Class A felonies, which are punishable by life imprisonment, "with a prospect of no possibility of extended supervision." The court observed that "there are no more serious crimes than Class A felonies in the Wisconsin Statutes."

11

¶28    The circuit court then found that Christopher's actions "were violent and egregious in nature," as Christopher "carried out his plan to rape and murder a ten-year-old girl, viciously and with brutality." The court further found that Christopher's crimes were "clearly premeditated."

¶29    The circuit court next rejected the defense's argument that the *Gallion* factors—i.e., the protection of the public, the gravity of the offenses, and the defendant's rehabilitative needs—"prove[d]" that reverse waiver would not depreciate the seriousness of Christopher's offenses. *See **State v. Gallion***, 2004 WI 42, ¶23, 270 Wis. 2d 535, 678 N.W.2d 197; *see also* WIS. STAT. § 973.017(2). The court explained that it did not agree with the defense that "a possible ten[-]year confinement in the juvenile system, registering as a sex offender[,] and [the fact] that [Christopher] would be vulnerable to the adult system would be punishment enough for" Christopher.

¶30    For all of these reasons, the circuit court concluded that Christopher had failed to prove, by a preponderance of the evidence, that reverse waiver would not depreciate the seriousness of the offenses. The court therefore denied Christopher's petition for reverse waiver. *See* WIS. STAT. § 970.032(2) (stating that the court "shall retain jurisdiction unless the juvenile proves" all three statutory factors "by a preponderance of the evidence"). Christopher now appeals.

## DISCUSSION

¶31    "A decision to retain or transfer jurisdiction in a reverse waiver situation is a discretionary decision for the [circuit] court." ***Dominic E.W.***, 218 Wis. 2d at 56. We will affirm the court's discretionary decision as long as it examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could

12

reach. *Kleser*, 328 Wis. 2d 42, ¶37. Importantly, when exercising its discretion, a circuit court "may reasonably reach a conclusion which another judge or another court may not reach." *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). Discretionary decisions are not tested by a "subjective standard, or even by our own sense of what might be a 'right' or 'wrong' decision in the case, but rather will stand unless it can be said that no reasonable judge, acting on the same facts and underlying law, could reach the same conclusion." *State v. Jeske*, 197 Wis. 2d 905, 913, 541 N.W.2d 225 (Ct. App. 1995).

¶32    In this case, the sole issue on appeal is whether the circuit court erroneously exercised its discretion by concluding that Christopher failed to meet his burden to prove that transferring jurisdiction to the juvenile court would not depreciate the seriousness of his offenses. *See* WIS. STAT. § 970.032(2)(b). As the circuit court correctly noted, when assessing this factor, "the court must decide under the specific facts and circumstances of the case how serious the offense was." *Dominic E.W.*, 218 Wis. 2d at 58 n.6. "[S]uch weighing of the facts by the [circuit] court is implicit in the reverse waiver statute." *Id.*

¶33    In *Dominic E.W.*, for instance, the juvenile defendant was charged as an adult with battery to a correctional officer. *Id.* at 53. The circuit court granted the defendant's petition for reverse waiver. *Id.* In addressing the second reverse waiver factor, the court noted that: (1) "under normal circumstances," the defendant's acts would have constituted misdemeanor battery, "except for the status of the individual who had been battered"; (2) the battery was impulsive, not premeditated; (3) there were no ongoing problems between the defendant and correctional staff before the battery; and (4) the defendant had few, if any, behavioral issues before the battery. *Id.* at 57-58. On these facts, the circuit court

13

determined that reverse waiver would not depreciate the seriousness of the offense.

¶34 On appeal, we affirmed the circuit court's exercise of discretion, including its consideration of the specific facts surrounding the offense when addressing the second reverse waiver factor. In particular, we approved the court's consideration of the seriousness of the defendant's conduct—specifically, "whether it was an egregious type of battery, like the 'vicious major attack' in [*Verhagen*, 198 Wis. 2d at 192-93], or some lesser type of battery."[6] *Dominic E.W.*, 218 Wis. 2d at 58 n.6.

¶35 Similarly, in this case, the circuit court properly exercised its discretion by considering the specific facts surrounding Christopher's offenses and concluding, based on those facts, that Christopher had failed to meet his burden on the second reverse waiver factor. In its written decision, the court detailed the number and severity of the victim's injuries, as documented in the autopsy report. The court noted that Christopher admitted committing a physical assault on the victim that was "vicious and brutal in nature, involving punching the victim, knocking the victim down and hitting the victim with a stick." The court also noted that Christopher admitted strangling the victim until he believed that she was dead and then removing her pants, biting her, and attempting to have sex with

---

[6] In *State v. Verhagen*, 198 Wis. 2d 177, 194, 542 N.W.2d 189 (Ct. App. 1995), we affirmed a circuit court's denial of a juvenile defendant's petition for reverse waiver, concluding that the court had "exercised its discretion and provided a reasonable basis for its decision." As particularly relevant to this case, the circuit court in *Verhagen* concluded that reverse waiver would depreciate the seriousness of the offense because the defendant's battery of a youth counselor in a correctional facility was "a vicious major attack." *See id.* at 193.

her.  The court emphasized that the victim's autopsy found evidence of a sexual assault.

¶36    The circuit court also emphasized that Christopher convinced the victim to leave a residence and go down a trail with him, with the specific, pre-existing intention to rape and kill her.  The court found that Christopher's actions "were violent and egregious in nature," that Christopher "carried out his plan to rape and murder a ten-year-old young girl, viciously and with brutality," and that his crimes were "clearly premeditated."  The court also noted that two of the charged crimes are Class A felonies and that "[t]here are no more serious crimes than Class A felonies in the Wisconsin Statutes."

¶37    Under these circumstances, the circuit court found that possible confinement in the juvenile system for ten years and the requirement to register as a sex offender would not be "punishment enough" for Christopher.  As such, the court determined that Christopher had not met his burden to show that reverse waiver would not depreciate the seriousness of the offenses.  The court's decision shows that it examined the relevant facts, applied a proper standard of law, and used a demonstrated rational process to reach a decision that a reasonable judge could reach.  As such, the court did not erroneously exercise its discretion. *See Kleser*, 328 Wis. 2d 42, ¶37.

¶38    Christopher raises several—often overlapping—arguments in support of his claim that the circuit court erroneously exercised its discretion.  As an initial matter, Christopher theorizes that the three reverse waiver factors reflect a legislative determination that, when making reverse waiver decisions, courts should apply "a Utilitarian theory of punishment, whereby punishment is forward-looking and serves the purpose of minimizing future harm, rather than a

Retributive theory of punishment, whereby punishment is backward-looking and serves the purpose of making a person suffer because they caused harm."

¶39    Christopher then asserts that the circuit court "correctly applied the Utilitarian theory of punishment" to the first and third reverse waiver factors but failed to apply that theory to the second factor. According to Christopher, "Per the Utilitarian theory of justice, the only level of punishment that is appropriate is that which will motivate the offender to change their behavior." Christopher asserts that, in this case, putting him "in adult prison for life is not necessary" because it will not serve his treatment needs or promote deterrence. Instead, Christopher asserts that such an outcome "is only punishment for the sake of punishment, which is not what the law permits for juveniles."

¶40    This argument fails because Christopher cites no legal authority to support it. He cites no case law, specific statutory language, or legislative history showing that, by adopting the three reverse waiver factors in WIS. STAT. § 970.032(2), the legislature intended to restrict circuit courts to applying a "Utilitarian theory of punishment"—or anything akin to that notion—when making reverse waiver decisions. Moreover, Christopher cites no legal authority in support of his claim that "punishment for the sake of punishment … is not what the law permits for juveniles."[7] This court need not consider arguments that are

---

[7] It is well established that "punishment of the defendant" is a legitimate sentencing objective in cases involving adult offenders. *See* **State v. Gallion**, 2004 WI 42, ¶40, 270 Wis. 2d 535, 678 N.W.2d 197.

(continued)

unsupported by references to legal authority, *see State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992), and we decline to do so here.

¶41     Christopher next emphasizes that "the case law on reverse waiver is clear that reverse waiver is available even if the charged offense is serious." He contends, "[The fact t]hat juveniles charged in criminal court with first-degree intentional homicide are statutorily eligible for reverse waiver means that there will be juveniles so charged for whom reverse waiver is appropriate." Here, however, the circuit court did not conclude that Christopher had failed to meet his burden on the second reverse waiver factor simply because Christopher is charged with first-degree intentional homicide. Instead, the court determined that under the specific factual circumstances of this case, Christopher had failed to show that reverse waiver would not depreciate the seriousness of his offenses. Although the court noted that Christopher is charged with two Class A felonies, it is clear that the court's decision was not based on the classification of the offenses alone but on the specific factual circumstances surrounding the charged crimes.

¶42     Next, Christopher argues that reverse waiver "does not depreciate the seriousness of the offense for a fourteen-year-old child with [ASD]."

---

Additionally, our supreme court has stated that "retribution" is "a legitimate penological justification for imposing a sentence of life without parole upon a 14-year-old who commits intentional homicide." *See State v. Ninham*, 2011 WI 33, ¶80, 333 Wis. 2d 335, 797 N.W.2d 451. "The heart of the retribution rationale is that a criminal sentence must be directly related to the personal culpability of the criminal offender." *Id.* (citation omitted). "While juvenile offenders are generally less culpable than adult offenders and therefore generally less deserving of the most severe punishments, the case for retribution increases with respect to imposing a life without parole sentence upon a juvenile who intentionally takes the life of another." *Id.* (citations omitted). This reasoning undercuts Christopher's argument that the law does not permit punishment as a sentencing objective for juvenile defendants and that, accordingly, a court's reverse waiver determination must conform to a Utilitarian, rather than Retributive, theory of punishment.

Christopher argues that juveniles "are not miniature adults" because scientific research shows that "the brain does not fully develop until, on average, age 25." Christopher further cites the opinions of Caldwell, Benson, and Garbarino that his offenses were the result of his ASD, combined with his compulsive viewing of internet pornography. Christopher argues that, in light of these personal characteristics, transferring his case to juvenile court would not depreciate the seriousness of his offenses.

¶43 Christopher's argument in this regard essentially asks us to ignore our standard of review. In making its reverse waiver decision, the circuit court was clearly aware of Christopher's age, his ASD diagnosis, his viewing of internet pornography, and the three experts' opinions regarding those factors as causes of Christopher's offenses. The court nevertheless concluded that Christopher had failed to prove that reverse waiver would not depreciate the seriousness of his offenses, based on the "violent and egregious" nature of Christopher's vicious and brutal attack on a ten-year-old girl and the fact that Christopher's crimes were "clearly premeditated."

¶44 It was within the circuit court's discretion to weigh these factors in determining whether Christopher had met his burden of proof as to the second reverse waiver factor. Although another court could have reached a different conclusion on the facts presented, that does not mean that the court in this case erroneously exercised its discretion. Instead, as explained above, the court examined the relevant facts, applied a proper standard of law, and used a demonstrated rational process to reach a reasonable conclusion. *See Kleser*, 328 Wis. 2d 42, ¶37. Christopher's contention that the court should have given more weight to certain factors provides no basis for us to reverse the court's discretionary decision. *See Dane Cnty. Dep't of Hum. Servs. v. John L.-B.*,

No. 2013AP462, unpublished slip op. ¶68 (WI App May 16, 2013) ("It is not an appellate court's role to re-weigh the factors in a circuit court's discretionary decision.").[8]

¶45    Christopher also asserts that the circuit court erroneously exercised its discretion because the court found his witnesses' testimony to be credible as to the first and third reverse waiver factors but "essentially disregarded" the same testimony when addressing the second factor. According to Christopher, "[t]his is problematic because the testimony on all three of the statutory factors overlaps, particularly for Drs. Benson, Caldwell, and Garbarino." Thus, Christopher asserts that it was "inherently inconsistent" for the circuit court to accept his witnesses' testimony "on some, but not all, of the factors in the reverse waiver statute."

¶46    We disagree. A trier of fact "is not bound by the opinion of an expert; rather, it can accept or reject the expert's opinion." *State v. Kienitz*, 227 Wis. 2d 423, 438, 597 N.W.2d 712 (1999). In addition, a fact finder is free to accept portions of an expert witness's testimony while rejecting other portions of the same witness's testimony. *State v. Owen*, 202 Wis. 2d 620, 634, 551 N.W.2d 50 (Ct. App. 1996).

¶47    Accordingly, in this case, the circuit court could accept the various witnesses' testimony regarding Christopher's diagnoses, his treatment needs, whether his needs could be met in the adult correctional system, and whether retaining jurisdiction in adult criminal court was necessary to deter Christopher and other juveniles from committing similar offenses. Accepting that testimony,

---

[8] An unpublished opinion authored by a single judge and issued on or after July 1, 2009, may be cited for its persuasive authority. *See* WIS. STAT. RULE 809.23(3)(b).

however, did not require the court to conclude that reverse waiver would not depreciate the seriousness of Christopher's offenses. Even after concluding that the witnesses' testimony on the aforementioned subjects was credible, the court could still conclude that the specific factual circumstances surrounding Christopher's crimes outweighed those other considerations and showed that reverse waiver would depreciate the seriousness of the offenses. The court's determination regarding the second factor is not inherently inconsistent with its determinations regarding the first and third factors.

¶48 Christopher next argues that the circuit court failed to use a demonstrated rational process to examine and apply the relevant facts. He contends that the court made only "minor, conclusory findings of fact" and "completely failed to apply those facts to the law." He further asserts that the court failed to explain why his placement in the SJO program until age twenty-five would be an insufficient consequence for his offenses.

¶49 We reject Christopher's claim that the circuit court's factual findings and reasoning were insufficient. The court made numerous factual findings regarding the circumstances of Christopher's offenses. The court then specifically found that Christopher's conduct was "violent and egregious in nature," vicious, brutal, and "clearly premeditated." Given the aggravated nature of Christopher's conduct, the court determined that a ten-year disposition under the SJO program and the requirement that Christopher register as a sex offender would not constitute sufficient "punishment" for Christopher's acts. This explanation was adequate to show why the court concluded that Christopher had failed to meet his burden of proof on the second reverse waiver factor. *Cf. **Verhagen***, 198 Wis. 2d at 193-94 (upholding a circuit court's denial of a reverse waiver petition where the

court concluded that reverse waiver would depreciate the seriousness of the offense because the defendant's conduct was "a vicious major attack").

¶50    Finally, Christopher argues that the circuit court failed to apply a proper standard of law.  He notes that the court cited **Verhagen** for the proposition that "it is the 'unusual situation' where the juvenile is able to prove that transfer of jurisdiction to juvenile court is appropriate."  *See id.* at 188.  Christopher contends that this is an incorrect statement of the law because the cited language from **Verhagen** comes from a discussion about "which party bears the burden of proof in the reverse waiver context."[9]  According to Christopher, "[t]he 'unusual situation' language quoted by the [c]ircuit [c]ourt comes from the five-factor test that the [c]ourt of [a]ppeals applied to determine that the burden of proof is on the juvenile."  Christopher asserts that the **Verhagen** court "never stated that it is the 'unusual situation' where the juvenile is able to meet his [or her] burden of proof."

¶51    Christopher's argument on this point is unpersuasive.  While the quoted language from **Verhagen** does come from a portion of the opinion addressing the proper allocation of the burden of proof, the **Verhagen** court expressly stated: "The unusual situation under the statutory scheme is one in which the court orders a transfer of jurisdiction to the juvenile court."  **Id.** at 188.  We agree with the State that while Christopher "attempts to distinguish the 'unusual situation' of a juvenile being reverse waived" from the situation of "a juvenile proving reverse waiver," "[t]his is a distinction without a difference."  As

---

[9] **Verhagen** applied a prior version of the reverse waiver statute, which did not specify which party had the burden of proof on the three reverse waiver factors.  *See Verhagen*, 198 Wis. 2d at 186.  Following **Verhagen**, the statute was amended to specify that the juvenile must prove all three factors by a preponderance of the evidence.  *See* 1995 Wis. Act 352, § 134.

the State aptly notes, "If it is the minor's burden to prove reverse waiver, and reverse waiver is presumed to be the 'unusual' outcome, then it logically means that proving reverse waiver will also be unusual." We therefore reject Christopher's argument that the circuit court applied an incorrect standard of law.

¶52 In summary, the circuit court's written decision shows that in assessing the second reverse waiver factor, the court examined the relevant facts, applied a proper standard of law, and used a demonstrated rational process to reach the reasonable conclusion that Christopher had failed to show that reverse waiver would not depreciate the seriousness of his offenses. Christopher's arguments to the contrary are unpersuasive. Accordingly, we affirm the court's order denying Christopher's petition for reverse waiver.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.